The UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel KANE, David Sherwin McCraw,
and James Michael Weber,
Defendants–Appellants.

No. 88–7051.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1989.

Mike Brown, Brown, Harding, Brown, Gargason & Rice, Lubbock, Tex., for David Sherwin McCraw.

Gary A. Taylor, Felty and Taylor, Lubbock, Tex., for James Michael Weber.

Jeffrey Gamso, Lubbock, Tex. (court appointed), for Daniel Kane.

Nancy M. Koenig, Steven M. Sucsy, Asst. U.S. Attys., and Marvin Collins, U.S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before JOHNSON, WILLIAMS and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Following a jury trial, appellants David Sherwin McCraw, James Michael Weber and Daniel Kane were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and with possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Benjamin Fuentes–Licon was acquitted of the charges. Because no reversible error has been demonstrated, we affirm the convictions.

## I. BACKGROUND [1]

Special Agent Larry Lamberson of the Drug Enforcement Administration first encountered appellant McCraw in late July 1988 when Lamberson, accompanied by "cooperating individual" Danny Dodd, went to the residence of Vernon Grissom in Austin, Texas, to discuss the possible purchase of cocaine. Although Lamberson did not meet Grissom at that time, he did meet McCraw. After several meetings between Lamberson and McCraw in the Austin area, McCraw indicated that he had a source who could produce ten kilograms of cocaine which Lamberson and Dodd were interested in purchasing for a price of $18,000 per kilo.

The men arranged to meet in a parking lot, at which time Lamberson displayed a briefcase filled with the purchase money. The transaction, however, did not take place at that time. Instead, the men arranged to meet in Lubbock to consummate the deal which, by that time, had grown to include seventeen kilograms of cocaine.

On July 27, Lamberson flew to Lubbock and met with local DEA agents to arrange for surveillance and for "flash money." McCraw and Dodd had checked into a local Days Inn. Lamberson arrived at the motel, and went to Dodd's room, 319. McCraw came to Dodd's room about an hour and one-half later and indicated that the cocaine had arrived in town and that the transaction could take place shortly.

McCraw told Lamberson that the cocaine was in town, and instructed Lamberson to get the money to the room. Lamberson said he wanted to leave the money in the car until after he had seen the cocaine. McCraw then left.

When McCraw returned to Dodd's room, he was accompanied by appellant Weber who was identified as the person who would go with Lamberson to look at the money. Weber and McCraw returned to room 317, registered to McCraw; soon Lamberson joined them there and reported that the money was on its way. Lamberson asked Weber if he had seen the cocaine and if it was packaged in kilos or in "ziploc" bags. Weber responded that he had seen the cocaine and that it was of very high quality.

On the way downstairs, Weber and Lamberson encountered appellant Kane. Web-

---

1. For purposes of this appeal, we need present only a skeletal outline of the facts established at trial and set forth in the appellants' briefs submitted to this Court. Where necessary, a more elaborate recount of the activities of the participants will be set forth in the discussion of individual grounds of error.

er told Kane that they were on the way to view the money. At the car, Lamberson showed Weber a briefcase filled with what amounted to be approximately $65,000. Weber then took Lamberson to room 118, which was registered in appellant Kane's name. Glen Osborn, an officer with the Lubbock Police Department who was assigned to the DEA, testified that he had observed Kane go upstairs to room 317, which was registered to McCraw. Osborn saw Kane enter the room, emerge quickly thereafter, and go downstairs and around the west end of the building. When Kane returned, he was carrying a maroon suitcase.[2]

Inside the room, Lamberson was introduced to Kane and Fuentes–Licon. Kane told the agent that he had twenty kilos of cocaine. Lamberson cut open one brick, and, after inspecting it, determined that it was high quality cocaine.[3] Lamberson asked Fuentes–Licon if all the cocaine was packaged in brick form; Fuentes–Licon nodded yes.

After Lamberson was satisfied that all the cocaine agreed upon had been delivered, he indicated that he would go get the money and take it to Dodd's room, 319. Kane indicated that he would rather count the money in Kane's room, 118. After some dickering, Lamberson agreed, and left the room as if to go retrieve the money.

Lamberson, returning to the car, called for surveillance teams to move in to make arrests. The strike force of officers entered the room, arrested the occupants, and seized the cocaine.[4] McCraw was arrested on the third-floor balcony. Following the arrests, appellant Weber stated to a DEA officer that he was "stupid for getting involved."

The three appellants and Fuentes–Licon were indicted on August 18, 1988, on charges of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court denied Kane and Weber's pretrial motions for severance as well as the renewed motions made at trial.

The trial was to a jury, which rendered a judgment acquitting Fuentes–Licon and convicting appellants Weber, Kane and McCraw. The various points raised by appellants are discussed in turn below.

## II. DISCUSSION

*Weber and Kane's Motion for Severance*

Although the general rule is that persons indicted together should be tried together, Fed.R.Crim.P. 14 provides for the severance of trials where it appears that a defendant will be prejudiced. Pursuant to this rule, both Weber and Kane filed motions for severance. The district court denied the motions, and Weber and Kane have appealed.

In ruling on a Rule 14 motion, the district court must balance the potential prejudice to the defendants against the public interest in joint trials where the case against each defendant arises from the same general transaction. *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir.1981). A district court's ruling on a motion to sever will not be disturbed by this Court absent a showing that the district court abused its discretion. *United States v. Hewes*, 729 F.2d 1302 (11th Cir.1984). In order to prevail on appeal, the appellant must show more than that a separate trial offered a better chance of acquittal. Rather, it is incumbent upon the appealing party to demonstrate that the trial was unfair and exposed the appellant to compelling prejudice against which the district court was unable to afford protection. *United States v. Sheikh*, 654 F.2d 1057, 1065 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

2. It was later discovered that the suitcase concealed 18 kilograms of cocaine.

3. Tests later indicated that the cocaine was 98% cocaine hydrochloride.

4. While the officers were attempting to enter room 118, Weber tried to leave from room 119, a connecting room. He was apprehended.

Neither Kane nor Weber has demonstrated reversible error. Consequently, we affirm the district court's denial of the motions to sever.

■ Kane and Weber each argue that his defense was mutually exclusive and irreconcilable with the defenses of his co-defendants. As to Kane, this contention can be easily dismissed. Kane brought no defense at all, and, therefore, cannot claim that his defense is inconsistent and irreconcilable with the defenses of his co-defendants. *See United States v. Marable*, 574 F.2d 224, 231 (5th Cir.1978) (no conflict in defenses between two defendants when only one asserted a defense). Weber's argument on this ground may also be summarily disposed of. Weber's defense of lack of knowledge is not inconsistent with any of the defenses propounded by his co-defendants.[5] The fact that a defendant admits that he is guilty of conspiracy does not necessarily create a conflict between the core of defenses with a co-defendant who maintains that he is not a member of the conspiracies. *United States v. Bruno*, 809 F.2d 1097 (5th Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987). The jury, if it believed a co-defendant's defense, was not required to disbelieve Weber. Weber has failed, therefore, to show that the introduction of the other defenses before the jury created a prejudicial atmosphere which surpassed the ability of the jury to consider the court's instructions.

■ As a corollary to the argument that the defenses are irreconcilable, Kane argues that the adversarial stance of their co-defendants created sufficient prejudice so as to require severance. This Court, in *Sheikh*, recognized that even if the defenses are not necessarily irreconcilable, the "taking of an adversarial stance on the part of counsel for codefendants may generate trial conditions so prejudicial to the codefendant under multiple attack as to deny him a fair trial." *Sheikh*, 654 F.2d at

1066. Our review of the record indicates that the district court did not err in refusing to sever on this basis. Kane argues that the statements made by his co-defendants' counsel created a veil of hostility which permeated the trial as a whole and mandated a severance.

Kane asserts that McCraw's defense of entrapment implicated a conspiracy. McCraw did not testify at trial. Any direct comment on the existence of a conspiracy made in support of McCraw's defense was propounded by counsel for McCraw. However, statements made by counsel are not evidence at trial, and the district court so instructed the jury. This Court presumes the jury heeded these instructions. Additionally, we note that McCraw's comments, during closing, that some of "these" people were involved in the conspiracy, did not specifically implicate Kane. Additionally, Kane argues that comments by Fuentes-Licons and Weber's counsel created compelling prejudice sufficient to mandate a severance.

In reviewing a claim that antagonistic defenses required severance, this Court often looks to whether the defendant was the "government's best witness against the other." *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir. Unit B 1981). In the instant case, the record indicates that the Government's case against Kane was established by the testimony of Agent Lamberson and Buddy Goldston, the chemist. Specifically, the evidence proferred by the Government indicated that Kane carried the maroon bag containing the cocaine, that Kane negotiated the transaction with Lamberson, and that the transaction took place in Kane's hotel room. In light of this evidence, it is clear that any comments from or evidence presented by Fuentes-Licon or Weber's counsel was not necessary for or determinative of the conviction. The substantial evidence supporting Kane's conviction indicates that the trial, as a

---

**5.** Only McCraw's defense of entrapment, which impliedly admitted the occurrence of a crime, comes close to implicating Weber. However, McCraw did· not put on specific testimony indicating that Weber was a party to any wrongdo-ing. The only statement specifically suggesting Weber's involvement which he points to in his brief was made by counsel during argument. Such statements are not evidence and the trial court instructed the jury to that effect.

whole, was fair and Kane was not exposed to compelling prejudice against which the district court was unable to afford protection.

■ Finally,[6] Weber claims he was denied the testimony of McCraw, and that such a denial would not have occurred had the trials been severed. In order to prevail on this argument, Weber must establish a bona fide need for McCraw's testimony, the substance of the testimony, its exculpatory nature and effect and that McCraw would in fact testify. *United States v. Williams,* 809 F.2d 1072, 1084 (5th Cir.1987), *cert. denied,* 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187 (1988). Weber has failed to establish that McCraw would in fact testify, or indicated how the evidence McCraw would present would be exculpatory.[7] Considering that the Motion for Severance only indicated that McCraw would "likely testify" and the fact that the proposed testimony was not clearly exculpatory, we find no abuse of the trial court's discretion.

Neither Kane nor Weber has established that the district court erred in denying their Rule 14 motions to sever. No ground for reversal has been demonstrated.

*Weber's Grounds of Error*

■ In addition to the severance ground, Weber argues that there was insufficient evidence to sustain a conviction. We have reviewed the record, and conclude that this ground of error is without merit. On appeal, this Court must affirm the conviction if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When viewed in the light most favorable to the Government, the evidence is more than sufficient to sustain Weber's convictions.

Weber also challenges the sentence imposed by the district court pursuant to the Federal Sentencing Guidelines. He argues that the district court erred by refusing to reduce the base offense level pursuant to either of two provisions in the Guidelines.

■ First, Weber points to the Guideline's provision for a reduction in offense level if the defendant was either a "minimal" or a "minor" participant. Second, Weber argues that he was entitled to a reduction because he "clearly demonstrate[d] a recognition and affirmative acceptance of personal responsibility" for his criminal conduct. Guidelines § 3E1.1(a). The district court found that Weber did not qualify under either provision. This Court will not disturb this finding absent a showing that it is clearly erroneous. *United States v. Mejia–Orosco,* 867 F.2d 216, 219 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). In light of the evidence indicating that Weber was the individual responsible for checking on the money, as well as Weber's assertion that the cocaine was high quality, we cannot say that the district court clearly erred in concluding that Weber was a major participant.

■ Likewise, we cannot conclude that the court's finding that Weber did not qualify for a reduction under section 3E1.1(a) was erroneous. Weber bases his argument that he accepted responsibility on his statements that he was stupid for having been involved. The district court did not clearly err in concluding that Weber has not accepted responsibility for his criminal conduct where, as here, the defendant has merely indicated that he used poor judgment by getting involved in the situation

---

**6.** Weber also points to the general rule that a severance is required where the evidence against one defendant is considerably stronger than the evidence against the appellant. Weber's argument in this regard is not well taken. The evidence adduced at trial supports a finding of Weber's guilt, and establishes him as an active conspirator at the heart of the conspiracy. In short, Weber was not convicted based on "simple association with the other defendants." Weber's Brief at 17.

**7.** For example, Weber claimed in his original motion that McCraw's testimony would show that McCraw told Weber he was coming to Lubbock to buy trucks and asked him to drive one back. Weber's own testimony, however, was that Kane was the one who was buying vehicles and who asked him to come. Furthermore, at trial, McCraw's attorney also accused Weber of lying about not knowing McCraw. All of this points to the fact that it is doubtful whether McCraw's testimony would even be neutral, let alone exculpatory.

and Weber continues to contest his responsibility on appeal.

Weber also raises a constitutional issue of interference with his right to a jury trial to contest matters other than factual guilt and still be considered for a reduction in offense level under this section. This issue was addressed and foreclosed in *United States v. White*, 869 F.2d 822 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).

*Kane's Ground of Error*

██ Kane argues that the district court erred in refusing to suppress the cocaine that was seized during the warrantless search of his motel room. Kane concedes that the possible "destruction of evidence is an exigency sufficiently serious to overcome the need for a warrant." Kane's Brief at 22. However, Kane argues that the exigent circumstances in the instant case were impermissibly created by the law enforcement officers themselves and that the officers had sufficient time to obtain a warrant. *United States v. Thompson*, 700 F.2d 944 (5th Cir.1983).

The Government offered evidence indicating that after Lamberson showed Weber the money at the car, it took approximately fifteen seconds to return to room 118. Kane then refused to go to informant Dodd's room to count the money. Additionally, Lamberson testified that the probability that drug dealers will be armed increases with the amount of money involved. The transaction in the instant case involved $360,000 worth of cocaine.

It was not until Lamberson entered Kane's room with Weber that he actually saw the cocaine. Prior to his arrival in Lubbock, in fact, he did not know where the anticipated transaction would take place. When he became aware that the transaction was to take place in Kane's room and that the contraband was present there, Lamberson was outnumbered by men who were probably heavily armed. When Lamberson and Weber went to view the cash at the car, McCraw was stationed on the third floor as a look-out. Had Lamberson attempted to obtain a warrant after leaving room 118, McCraw would be able to

see his movements. Lamberson feared that if he left for over five minutes, the men would become suspicious and would have attempted to flee or destroy the evidence.

Lamberson testified that it would have taken forty-five minutes to produce an affidavit and another fifteen minutes to read it to the magistrate in order to obtain a telephonic search warrant. Consequently, it would have taken significantly longer to obtain a warrant than the time which Lamberson, based on his knowledge as a narcotics officer, reasonably believed was available before the situation became volatile.

The Supreme Court has indicated that the gravity of the offense is "an important factor to be considered" in the exigent circumstances calculus. *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The district court, therefore, was entitled to consider the nature of the offense—distribution of narcotics—when ruling on the motion to suppress. Based on the record, the district court did not err in concluding that the Government did not create the exigent circumstances that justified the warrantless search of the hotel room.

*McCraw's Ground of Error*

Appellant McCraw contends that the attorneys for defendants Weber and Fuentes–Licon separately made impermissible comments concerning McCraw's failure to testify which constituted prejudicial error sufficient to require a new trial. For the reasons stated below, we find no reversible error and affirm.

McCraw complains of the following statement by counsel for Weber, made during the summation:

Mr. Brown has just spent 20 minutes with you giving you a very flowery speech about how his client was entrapped. And Ladies and Gentlemen, ... I submit to you that he was at least one of the people behind this whole scheme from the word go. I submit to you that he is one of the few people that could tell you what really happened in that room.

The district court sustained McCraw's timely objection on the grounds that the statement was an impermissible comment on McCraw's failure to testify and instructed the jury to disregard the reference.

Again during summation, counsel for Fuentes–Licon made the following statement:

> You've heard about two or two and one-half days of testimony. You've heard from a variety of witnesses, the case agent here from Austin, the local DEA agent Osborn from here in Lubbock, you've heard from my client, you've heard from Mr. Weber. So, you've gotten somewhat of a picture. There are some parts of this picture missing which would be to my benefit if you had the complete picture. To be frank, I wish I could call everybody to testify, but I can't do that.

McCraw again voiced a timely objection and the jury was instructed to disregard the statement.

The Fifth Amendment guarantees a defendant an absolute right to silence, and should the defendant choose to exercise this right, he is further guaranteed the right to be free from adverse prejudicial comments based on the assertion of that right. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *De Luna v. United States*, 308 F.2d 140 (5th Cir.1962). In examining whether the integrity of this right has been violated, it is irrelevant whether the comment was voiced by the prosecutor or by counsel for a co-defendant. This is because the impropriety of the remark stems not from the role of the speaker, be it judge or prosecutor or co-counsel, but from the effect on the jury. *Id.*

In order to establish prejudicial error, this Court must apply a two-tiered test. The first tier involves a determination of whether the comments were constitutionally impermissible as a violation of the integrity of McCraw's right to remain silent. For the purposes of this appeal, we assume, without deciding, that the comments were impermissible. Second, once it is determined that the comments are improper, the Court must consider whether they were harmless beyond a reasonable doubt. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude that the statements were harmless error.

In *Chapman*, the Supreme Court was faced with two questions: can there ever be harmless constitutional error and, if so, was the error in the *Chapman* case harmless. After noting that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless," the Court declined to adopt a per se rule that all constitutional error is harmful. The Court noted that in fashioning such a harmless-constitutional-error rule, it must be realized that "harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one." *Chapman*, 87 S.Ct. at 827.

With this in mind, the Supreme Court fashioned a rule which examines whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 827 (citations omitted). The burden is on the beneficiary of the error to demonstrate that it was harmless. Applying this standard to the facts in *Chapman*, the Supreme Court concluded that the State had not met this burden. Because the state prosecutor and the trial judge "continuously and repeatedly"[8] made references to the defendant's failure to testify, the defendant was entitled to a new trial.

The more recent Supreme Court case of *United States v. Hasting* provides further insight into the application of the *Chap-*

---

**8.** There were over a dozen references to the defendant's failure to testify made in a "machine-gun repetition" manner.

*man* harmless-error rule. In holding that some constitutional errors may in fact be harmless, "the Court [in *Chapman*] recognized that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *Hasting*, 103 S.Ct. at 1980. Consequently, the "Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *Id.* *Chapman*, therefore, stands for the proposition that criminal defendants are not entitled to reversal of a conviction where the error, albeit constitutional in nature, can be said to be harmless pursuant to the *Chapman* analysis.

 We now turn to the application of the *Chapman* analysis to the instant facts. In doing so, we follow the guidance provided in *Hasting* and, after examining the record, inquire whether "absent the prosecutor's allusion to the failure of the [defendant to testify, it is] clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Id.* at 1981. We conclude that it is clear; the error presented in the instant case is harmless and the conviction is affirmed.[9]

## III. CONCLUSION

We have reviewed the numerous grounds of error presented by the appellants in the instant case. No reversible error having been established, we affirm the convictions.

AFFIRMED.

---

**9.** For example, the evidence against McCraw included Lamberson's testimony that McCraw informed the agent of the plans, that McCraw advised Lamberson of the availability of the cocaine, and that McCraw contacted the source of the cocaine.