**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jamie Barrera LOPEZ, Eugenio Ozuna
Ramirez, Jr., Eliseo De La Garza, and
Robert San–Martin Delgado, Defen-
dants–Appellants.**

No. 91–6116.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1992.

Rehearing Denied Jan. 11, 1993.

Nancy M. Simonson, J.A. Canales, Corpus Christi, Tex., Richard H. Garcia, McAllen, Tex., for Lopez.

William M. Mills, Atlas & Hall, McAllen, Tex., for Ramirez.

Bobby Flores, McAllen, Tex., for Delgado.

L. Aron Pena, Edinburg, Tex., for Garza.

Paul T. Cappuccio, Associate Deputy Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Paula Offenhauser, Kathlyn G. Snyder, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for the U.S.

Before KING, WILLIAMS, and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

At a joint trial, Defendants–Appellants Jamie Barrera Lopez, Eugenio Ozuna Ramirez, Jr., Eliseo De La Garza, and Robert San–Martin Delgado were each convicted on one count of conspiring to possess and distribute marihuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Lopez, Ramirez, and Delgado were also each convicted on one count of possessing marihuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and of 18 U.S.C. § 2. Both counts relate to a series of negotiations beginning May 1, 1990, leading up to the sale of 432 pounds of marihuana on May 16, 1990. Delgado and Lopez were sentenced to 78 months in prison, Ramirez was sentenced to 71 months, and De La Garza to 66 months. Each appellant faces a four-year term of supervised release following imprisonment.

Appellants raise six issues on appeal. All four challenge the sufficiency of the evidence, Lopez challenges the admission of a remote conviction, De La Garza and Ramirez challenge the denial of their Motions for Severance, and De La Garza complains of the denial of his Motion for New

Trial. We affirm the convictions and the rulings of the district court.

## I.  FACTS AND PRIOR PROCEEDINGS

Between May 1 and May 16, 1990, McAllen undercover police officer Anacleto Botello and narcotics agent Israel Saldivar worked through a confidential informant to negotiate the purchase of a large quantity of marihuana. The informant initially introduced Botello to De La Garza on May 1, 1990. Botello testified that he asked De La Garza about purchasing 200 to 300 pounds of marihuana at a cost of $425 per pound. On May 2, De La Garza introduced the officers to Ramirez, who confirmed the purchase quantity and price.

Several attempts to get together on a deal misfired for one reason or another. Finally on May 16, in the midafternoon, the informant called the agents, who met Ramirez at a Circle K convenience store. Ramirez then led the agents to the property owned by Lopez on Two Mile Line Road to conclude the transaction. Because the transfer was to take place at the back of the property, however, the officers refused to close the deal and left. At 6:30 p.m., the officers again met Ramirez and the informant at the Circle K. Botello testified that Ramirez wanted the officers to accompany him to pick up the owner of the marihuana, but the officers persuaded Ramirez to meet them at the load vehicle containing the drugs. The surveillance team followed Ramirez first to the Two Mile Line property, where he picked up an unidentified man, and then to the load vehicle's location.

Meanwhile, the informant directed the officers to a house on Harvey Street. When they arrived, they did not see the load vehicle. Two men came out of the house, spoke with the informant, got into a car, and led the officers down the street to another house. Both officers testified that one of the men, Delgado, motioned for them to follow. When they reached the other house, Delgado pulled into the driveway and parked behind a white pickup with a camper top. Delgado and his companion then left the car to sit at a nearby picnic table. After waiting awhile, Saldivar and the informant went to the pickup to see whether it contained marihuana. At that point, Ramirez arrived with Lopez, who got out of the passenger side of Ramirez's vehicle. According to Saldivar, Lopez walked up, looked into the truck, and asked what Saldivar was doing, to which Saldivar responded that he was checking out the marihuana. Having seen the drugs, Saldivar then signaled Botello, who gave the bust signal. Other officers appeared and arrested Ramirez, Lopez, and Delgado. The fourth man escaped and was never identified. De La Garza was not present and was arrested later. Following a three day trial, a jury rendered guilty verdicts on all counts, and all defendants timely appealed.

## II.  DISCUSSION

### SUFFICIENCY OF THE EVIDENCE

■ All four appellants charge that the evidence presented in the district court was insufficient to sustain their convictions. Because decisions about the credibility of the evidence are the province of the jury, we review both the evidence and the inferences drawn from the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 77, 80, 62 S.Ct. 457, 468, 469, 86 L.Ed. 680 (1942). In weighing the evidence in this case we follow the Supreme Court's holding that circumstantial evidence is not intrinsically different from testimonial evidence. *United States v. Bell*, 678 F.2d 547, 549 n. 3 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 549; *see also United States v. Vasquez*, 953 F.2d 176, 181 (5th Cir.), *cert. denied sub nom. Gomez v. United States*, —— U.S. ——, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992). Thus, whether dealing with testimonial or circumstantial evidence, the test for sufficiency of the evidence is whether the jury could reasonably, logical-

ly, and legally infer that the defendant was guilty beyond a reasonable doubt. *United States v. Jackson,* 700 F.2d 181, 185 (5th Cir.), *cert. denied sub nom. Hicks v. United States,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

### 1. Conspiracy

■ Count one of the indictment alleges that all appellants conspired to possess marihuana with the intent to distribute. To prove conspiracy under 21 U.S.C. § 846, the prosecution must show beyond a reasonable doubt (1) that there was an agreement to violate the narcotics laws; (2) that each appellant knew of the agreement and intended to join the conspiracy; and (3) that each appellant voluntarily participated. *United States v. Vergara,* 687 F.2d 57, 60–61 (5th Cir.1982). Concert of action can indicate agreement and voluntary participation. The surrounding circumstances may establish knowledge of a conspiracy. Also, the government need not prove an overt act in furtherance of the conspiracy to prove that a drug conspiracy existed. *United States v. Carter,* 953 F.2d 1449, 1454 (5th Cir.), *cert. denied sub nom. Hammack v. United States,* — U.S. —, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992).

After a meticulous review of the record, we hold that the evidence was sufficient for a reasonable jury to find each of the four defendants guilty of conspiracy beyond a reasonable doubt. We discuss separately the evidence relevant to each defendant.

### a. De La Garza

■ Agent Botello testified that the confidential informant introduced him to De La Garza, with whom he discussed the purchase of a particular amount of marihuana for a specific price. Agent Saldivar then "flashed" $80,000 to indicate that the agents were willing to make the deal. Botello further testified that De La Garza introduced him to Ramirez, a "man that [Botello] needed to know." De La Garza participated in subsequent negotiations and attempts to conclude the sale, which finally was to occur on May 16, the day of the

arrests. De La Garza testified, offering an innocent explanation for some of his actions and suggesting that the agents were lying about their conversations with him. But credibility is for the jury, which chose to believe the agents and not De La Garza. *Carter,* 953 F.2d at 1455. The evidence was sufficient for the jury to discredit De La Garza's explanation reasonably and permissibly and to find him guilty of conspiracy.

■ De La Garza argues that he could not have been part of the later operation because he was no longer present in the region at the time of the sale. It is not necessary for every co-conspirator to participate in every transaction, however, to be a member of a single conspiracy. *United States v. Stowell,* 947 F.2d 1251, 1258–59 (5th Cir.1991), *rehearing denied,* 953 F.2d 188 (5th Cir.) (per curiam), *cert. denied,* — U.S. —, 112 S.Ct. 1269, 117 L.Ed.2d 497 (1992). Additionally, the time when a member joined the conspiracy or the role he played is irrelevant to whether he is guilty of conspiracy, and he need not have known all of his co-conspirators. *Vergara,* 687 F.2d at 61.

De La Garza also asserts that he was entitled to a jury instruction on multiple conspiracies. The record shows that De La Garza failed to request such a jury instruction. Thus there was no error.

### b. Ramirez

■ Ramirez asserts that the government merely piled inference on inference and did not prove its case beyond a reasonable doubt. There was direct testimony, however, that Botello and Ramirez expressly negotiated the terms of the drug transaction after De La Garza introduced them. This alone is clearly sufficient evidence to justify a conviction for conspiracy. But in addition, at the second meeting on May 16, Ramirez agreed that he would pick up the owner of the marihuana and meet the agents at the load vehicle to conclude the deal. The jury properly could conclude that Ramirez violated the narcotics laws by negotiating and arranging the sale of the marihuana.

#### c. Delgado

■ Delgado's actions on May 16 constituted enough evidence for the jury to infer his agreement and participation from the "development and collocation of circumstances" and his knowledge from the surrounding circumstances. *Vergara,* 687 F.2d at 61. The agents testified that on May 16 they agreed with Ramirez to meet at the load vehicle. The agents then proceeded to Delgado's house, expecting the load vehicle to be there. When they did not find the truck, Delgado led them up the street to his parents' house, parked behind the truck, and waited for fifteen to twenty minutes until Ramirez arrived. Finally, when the arresting officers burst onto the scene, Delgado immediately fled.

■ While flight alone is insufficient to support a guilty verdict, it is relevant and admissible, and the jury could take into account Delgado's flight. *United States v. Flores,* 564 F.2d 717, 718–19 (5th Cir.1977). Taking Delgado's actions in the context of the surrounding circumstances and in conjunction with both Ramirez's actions and the presence of 432 pounds of marihuana, the jury properly concluded that Delgado was guilty in the conspiracy.

#### d. Lopez

■ Lopez argues that he was merely present at the house on Harvey Street and that the evidence did not establish his involvement in the conspiracy. The evidence, however, supports the jury verdict.

Lopez established through his own testimony that he owned the property on Two Mile Line Road. Surveillance agents testified that they followed Ramirez to the property several times and observed Lopez's vehicle near the gate. On May 8, Ramirez left the undercover agents in order to locate the marihuana, and he traveled to the Two Mile Line property. On May 16, Ramirez first led Botello and Saldivar to the Two Mile Line property to conclude the deal, but the agents refused to enter the property. Later that day, Ramirez told Botello he was going to pick up "the individual that was to get paid for the marihuana," and drove a Suburban to the

Two Mile Line property, where he picked up an unidentified man. From there Ramirez went directly to Delgado's parents' house where the agents and Delgado waited by the load vehicle, and Lopez emerged from the Suburban. According to Saldivar, who was opening the load vehicle to examine the drugs, Lopez approached him and asked what he was doing. Saldivar responded that he was checking the marihuana. Lopez then walked to where Delgado was sitting nearby and fled with Delgado at the appearance of the arresting officers.

Lopez testified that he was present at the scene because he had offered Ramirez the Suburban as compensation for construction work, and Ramirez was returning the Suburban to him. The jury obviously did not believe him. It was reasonable to conclude that Lopez was the owner of the marihuana because Ramirez went to pick up the owner and returned with Lopez to the site of the drug deal. The jury reasonably could discredit Lopez's explanation about returning the Suburban because he arrived as a passenger, exited the car while Ramirez remained in the driver's seat, and walked up to the agent at the load vehicle. Considering those inferences along with Lopez's conversation with Saldivar, his sitting down with Delgado, and his flight from the scene, the jury justifiably found beyond a reasonable doubt that Lopez knew of the conspiracy, agreed to it, and participated by arriving to conclude the drug sale.

Lopez relies on several cases to argue that the evidence was insufficient to prove his knowing participation in the conspiracy. The cases are distinguishable. In *United States v. Longoria,* 569 F.2d 422 (5th Cir. 1978), one defendant was the passenger in a car carrying marihuana. Lopez, however, was not merely an innocent passenger. Ramirez specifically stated that he was going to pick up the marihuana's owner, and he returned with Lopez. In *United States v. Jackson,* 700 F.2d 181 (5th Cir.1982), *cert. denied sub nom. Hicks v. United States,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983), a man joined friends in a restaurant while they were transacting a

drug deal and sat, saying nothing. Lopez, on the other hand, did not appear unexpectedly, and he spoke with Saldivar about the drugs. In *United States v. Caro*, 569 F.2d 411 (5th Cir.1978), Caro resembled an unidentified man involved in a drug transaction, and he fled when police came to his home to question him. Caro, however, was never identified at the scene of a drug transaction; Lopez was. Finally, in *United States v. Sacerio*, 952 F.2d 860 (5th Cir. 1992), a man was paid to drive a rental car to New Orleans. After police impounded the car and discovered drugs, the defendants' behavior in trying to retrieve the car was consistent with innocence. Again, Lopez arrived after Ramirez left to retrieve the drugs' owner and fled when officers appeared. These cases are not persuasive. Lopez was far more deeply involved in the criminal activity than any of the defendants in these cases.

*2. Possession*

▮ Ramirez, Delgado, and Lopez assert that the evidence was insufficient to support their convictions for possession with intent to distribute. The government must prove three facts to sustain the convictions: (1) that each defendant knowingly (2) possessed the drug (3) with the intent to distribute. *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). Possession may be actual or constructive, joint among several defendants, and established by circumstantial evidence. This court has defined constructive possession as "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *Id.* (quoting *United States v. Glasgow*, 658 F.2d 1036, 1043 (5th Cir.1981)).

▮ One who owns or controls a vehicle that contains contraband can be deemed to possess. *Vergara*, 687 F.2d at 61. Additionally, one who exercises dominion over premises where contraband is found can be deemed to possess. *United States v. Carter*, 953 F.2d 1449, 1456 (5th Cir.), *cert. denied sub nom. Hammack v. United States*, —— U.S. ——, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992). Finally, the

jury could infer the intent to distribute from possession of a large amount of drugs. *Vergara*, 687 F.2d at 62. Because 432 pounds of marihuana exceeds what anyone would have for personal use, the jury reasonably found that any defendant who possessed the marihuana had the intent to distribute.

▮ Ramirez was obviously involved in possession. He arranged the drug deal and brought all the players together at the load vehicle's location. Additionally, the load vehicle belonged to Ramirez. Ownership, coupled with his knowledge that the drugs were in the vehicle, can amount to constructive possession. *Vergara*, 687 F.2d at 61.

▮ Delgado's possession of the marihuana is also obvious. The agents first were directed to Delgado's house to find the load vehicle. Delgado then led them to his parents' house and parked behind the load vehicle. Finally, Delgado fled when the arresting officers appeared. Both his actions and the fact that he exercised dominion over his parents' property support the conclusion that he knowingly and constructively possessed the marihuana. *Carter*, 953 F.2d at 1456.

▮ Delgado's possession conviction is also proper under the aiding and abetting statute, 18 U.S.C. § 2. As a co-conspirator, Delgado is liable for the substantive offenses committed by other members of the conspiracy in furtherance of the common plan. *United States v. Alvarado*, 898 F.2d 987, 993 (5th Cir.1990); *see also Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). We can affirm Delgado's possession conviction on the basis of both his constructive possession and his status as a co-conspirator.

▮ As for Lopez, the jury reasonably concluded that Lopez was the owner of the marihuana when he arrived at the load vehicle with Ramirez. This fact closely resembles evidence in *Alvarado*. In that case, Alvarado was negotiating a drug deal with an undercover officer. His co-defendant arrived when Alvarado said the drugs

would arrive, and we held that the jury reasonably found the co-defendant to be the drugs' owner. *Alvarado*, 898 F.2d at 992. Lopez's conversation with Saldivar also provided evidence that Lopez knew the marihuana was in the pickup truck. Finally, he fled when the arresting officers appeared. The suspicious circumstances and the suggestion of ownership provide enough evidence to sustain the jury's finding of constructive possession. Lopez's conviction also can be sustained, of course, on the same co-conspirator grounds as Delgado's.

## ADMISSION OF REMOTE CONVICTION

Lopez contends that the trial court erred in admitting for impeachment purposes a seventeen-year-old conviction for possession of marihuana. We review evidentiary rulings for abuse of discretion. *United States v. Acosta*, 763 F.2d 671, 693 (5th Cir.), *cert. denied sub nom. Weempe v. United States*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

Agent Saldivar had testified that Lopez came up behind him, looked into the pickup truck, and briefly discussed what Saldivar was doing with the marihuana. On his direct examination, however, Lopez denied both having a conversation with Saldivar and going to the pickup truck. On cross-examination, the government first asked Lopez about the disputed conversation with Saldivar, and then asked without objection whether Lopez knew what the marihuana in Government's Exhibit No. 1 was. When Lopez denied recognizing the drugs, the government inquired whether Lopez had ever seen marihuana in person. Over the defense's objections of irrelevance, Lopez answered that he had not. A bench conference followed, at which the district court refused to allow the government to pursue questions about a suspected arrest for possession of marihuana in 1974.

The next day, however, the government produced a record of a 1974 conviction for possession of marihuana and sought to introduce the conviction in order to impeach Lopez. The court held a lengthy bench conference on the record, considering argu-

ments from both sides, and finally decided to admit the conviction for impeachment purposes. The court gave the jury a limiting instruction both when the evidence was admitted and during the jury charge.

### 1. Improper Questioning

■ Lopez first argues that the court erred by allowing the government to question Lopez about whether he had ever seen marihuana. Defense counsel objected at trial that the question was irrelevant. Under Federal Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Saldivar had testified that Lopez looked into the pickup and knew that Saldivar was examining the marihuana. Lopez's direct testimony refuted Saldivar's testimony; whether Lopez recognized marihuana was relevant to his knowledge of the drug deal about to take place. It follows that the district court properly overruled the objection and allowed the question.

■ Lopez's complaint that the questioning went beyond the scope of direct examination must fail. Federal Rule of Evidence 611(b) defines the scope of cross-examination as "limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." The government's questions were not beyond the scope of direct examination. Lopez was offering his account of the events of May 16. Because some of Lopez's testimony directly contradicted Agent Saldivar's, the integrity of the judicial proceeding was not threatened by the government's attempts to clarify the testimony and to question Lopez's credibility. Furthermore, because Rule 611 authorizes the district court to permit inquiry into further matters, it was within the court's discretion to allow the government to question Lopez about his knowledge of marihuana.

### 2. Improper Impeachment

Lopez next argues that the district court erred in admitting for impeachment purposes Lopez's 1974 conviction for possession of marihuana. Defense counsel offers several grounds for excluding the conviction, and the record reveals some confusion about the grounds for admitting the evidence. It is established, however, that a district court's reliance on improper grounds for admitting evidence will not amount to harmful error if other valid grounds for admission exist, because such a situation does not affect a defendant's substantial rights. *United States v. Blake*, 941 F.2d 334, 339 (5th Cir.1991) (citing *United States v. Cardenas*, 895 F.2d 1338, 1345 (11th Cir.1990) and *Collins v. Seaboard Coastline R.R. Co.*, 681 F.2d 1333, 1335 (5th Cir.1982)), *cert. denied,* —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 533 (1992).

#### a. Rules 608 and 609

The parties assert that Federal Rules of Evidence 608(b) and 609 apply to the admission of Lopez's remote conviction. In this instance, however, neither rule need be applied.

Federal Rule of Evidence 608(b) allows the cross-examiner to inquire into specific instances of conduct concerning the witness's character for truthfulness or untruthfulness as long as the questioning is probative of credibility. Rule 608(b), however, prohibits the introduction of extrinsic evidence to attack the witness's credibility. First, evidence of a conviction is extrinsic evidence forbidden by this rule. Second, possession of marihuana is not an act that indicates a witness's character for truthfulness or untruthfulness. Third, Rule 608 refers to Federal Rule of Evidence 609, which expressly covers impeachment by evidence of a conviction.

At first look, Rule 609 seems to support admission because the rule allows impeach-

ment with a prior conviction of a testifying defendant. Rule 609(a)(1) also requires the district court to determine that "the probative value of admitting this evidence outweighs its prejudicial effect to the accused." FED.R.EVID. 609(a)(1). The record reveals that the district court expressly considered the impeachment value of the prior conviction, the similarity of the crimes, and the centrality of Lopez's credibility. The court also implicitly balanced the probative value of the evidence with the prejudicial effect.

Rule 609(b), however, imposes a time limit. Convictions more than ten years old are inadmissible unless (1) the probative value of the conviction substantially outweighs its prejudicial effect and (2) the proponent gives the adverse party advance written notice of the intent to use the conviction. FED.R.EVID. 609(b). The intent of the notice provision is to prevent unfair surprise and to give the defendant's attorney the opportunity to prepare fully for trial. FED.R.EVID. 609 conference committee's note. Lopez's prior conviction occurred in 1974; because Lopez was given probation and was not confined, the date of the conviction controls. The government failed to give advance written notice of its intent to offer the conviction. The court ruled, however, that this failure was not fatal because there was no unfair surprise.[1]

The fundamental problem with the application of either Rule 608 or 609 is that neither rule applies "in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue." *See, e.g., United States v. Opager*, 589 F.2d 799, 801–02 (5th Cir.1979) (holding that Rule 608 prohibits admission of extrinsic evidence to attack the witness's character for truthfulness, but does not apply to impeachment by contradiction) and *United States v. Johnson*, 542 F.2d 230, 234–35 (5th Cir.1976) (holding

---

**1.** The government had produced the defendant's rap sheet, and the prosecutor did not discover the 1974 conviction until the day before he offered it. Additionally, the district court noted that both sides had received actual notice of the prior conviction in the Pre–Trial Services Report prepared well in advance of the trial. *United States v. Capote–Capote*, 946 F.2d 1100, 1105 (5th Cir.1991), *cert. denied sub nom. Rodriguez v. United States,* —— U.S. ——, 112 S.Ct. 2278, 119 L.Ed.2d 204 (1992).

that Rule 609 governs credibility evidence, not contradiction). Federal Rule of Evidence 403 controls the admission of contradiction evidence, and the remote conviction, if admissible, was admissible under Rule 403 in preference to Rules 608 and 609.

### b. Rules 402 and 403

■■■■■ Extrinsic evidence, which includes prior convictions, is admissible under the general standards of Rules 402 and 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Carter,* 953 F.2d 1449, 1458 (5th Cir.1992), *cert. denied sub nom. Hammack v. United States,* —— U.S. ——, 112 S.Ct. 2980, 119 L.Ed.2d 598. Relevant extrinsic evidence is admissible to contradict and possibly disprove a witness's testimony about a material issue of the case. *Opager,* 589 F.2d at 803. Extrinsic evidence is material, not collateral, if it contradicts "any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true." *Carter,* 953 F.2d at 1458 n. 3 (quoting MᶜCORMICK ON EVIDENCE § 47, at 112 (E. Cleary ed., 3d ed. 1984)). Finally, Rule 403 does not provide for a time limit like Rule 609 does.

■■■■ In *Opager,* we determined that payroll records should have been admitted to contradict a witness's testimony that he had seen the defendant sell cocaine when they worked together in 1974. *Opager,* 589 F.2d at 800, 803. The records would have shown that the witness and the defendant had not worked together then, calling into question the witness's testimony. Likewise, in *Carter,* a misdemeanor conviction was admissible under Rule 403 to challenge a defendant's testimony that he was working during the period of time when he was convicted. *Carter,* 953 F.2d at 1458. In the case at hand, Lopez asserted on

direct examination that he heard no response from Saldivar about drugs and that he never had seen and did not recognize marihuana. The government sought to contradict Lopez's testimony by proving with the prior conviction for possession that Lopez had seen and did recognize marihuana.

Rule 403 requires the court to weigh the probative value and the prejudicial effect.[2] This circuit has consistently applied the two-part test established in *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) and in *United States v. Robinson,* 700 F.2d 205, 213 (5th Cir.), *aff'd after remand,* 713 F.2d 110 (5th Cir.1983), *cert. denied,* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). Under *Beechum,* the court must first determine whether the conviction is relevant. Second, the court must decide that the probative value is not substantially outweighed by its prejudicial effect, as set forth in Rule 403. *United States v. Zabaneh,* 837 F.2d 1249, 1262–64 (5th Cir.1988). The district court properly found the conviction relevant. The record also supports the court in its holding that the weighing requirement was met.

### 3. Harmless Error

■■■■ Regardless of which grounds justify admission of Lopez's remote conviction, to be reversible error the admission of the conviction must have substantially prejudiced Lopez's rights. *See* FED.R.EVID. 103(a) and FED.R.CRIM.P. 52(a). Because Rule 403 provides valid grounds to admit the prior conviction, Lopez's rights were not prejudicially affected. *United States v. Blake,* 941 F.2d 334, 339 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 533 (1992). The court also gave the jury limiting instructions to clarify the purpose of the evidence. *United States v. Farias–Farias,* 925 F.2d 805,

---

**2.** Rule 403 authorizes:

    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

FED.R.EVID. 403.

811–12 (5th Cir.1991). The district court in the instant case carefully admonished the jury to take the conviction as evidence impeaching the credibility of Lopez's testimony, and it repeated that instruction when it gave the jury charge. There was no error.

## MOTIONS FOR SEVERANCE: De La Garza and Ramirez

Both De La Garza and Ramirez moved for severance. Before trial, De La Garza's attorney filed a Motion for Severance so that Ramirez could testify for De La Garza, because Ramirez refused to waive his Fifth Amendment rights by testifying in the joint trial. During trial, Ramirez's attorney orally moved for severance on two grounds: first, because the admission of Lopez's prior conviction would prejudice Ramirez, and second, because the government was unwilling to enter into a plea bargain unless all four defendants joined. Although Ramirez was willing to plea bargain, one of his co-defendants was not.

Generally, defendants who are indicted together are tried together. *United States v. Arzola–Amaya*, 867 F.2d 1504, 1516 (5th Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Under Federal Rule of Criminal Procedure 14, however, the trial court may grant a severance if the joinder of defendants prejudices one defendant. Because the decision lies within the trial court's discretion, we do not disturb that decision unless we find abuse of that discretion. *Arzola–Amaya*, 867 F.2d at 1516.

■ To prove that the trial court abused its discretion, an appellant must show more than a better chance of acquittal in a separate trial. The appellant must show that he received an unfair trial, which "exposed [him] to compelling prejudice against which the district court was unable to afford protection." *United States v. Kane*, 887 F.2d 568, 571 (5th Cir.1989), *cert. denied sub nom. Weber v. United States*, 493 U.S. 1090, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990). Additionally, the trial court must balance any prejudice to the defendant with the court's interest in judicial economy. *United States v. Harrelson*, 754 F.2d 1153 (5th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985).

■ De La Garza argues that he was prejudiced by his inability to have Ramirez testify in his behalf, because Ramirez elected not to testify in the joint trial. Initially, De La Garza's Motion for Severance stated only that Ramirez would "likely testify" if the causes were severed. After the court pointed out that the motion lacked an affidavit, De La Garza's attorney filed his client's handwritten affidavit, which stated that Ramirez had said that he knew De La Garza had nothing to do with the conspiracy.

The district court properly denied De La Garza's Motion for Severance. To be entitled to severance so that a co-defendant may testify, De La Garza must show "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify." *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir.), *rehearing granted and cause remanded*, 828 F.2d 1 (5th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987). In *Williams*, both Williams and his attorney presented the court with their affidavits stating that a co-defendant would testify, but they failed to offer an affidavit to that effect from the co-defendant. Consequently, we held that the district court properly denied Williams's Motion for Severance.

De La Garza's position is even weaker. Although his need for Ramirez's testimony is clear and the exculpatory nature of the testimony appears in De La Garza's affidavit, De La Garza offers little proof of the substance of the testimony and no proof that Ramirez would in fact testify. Defense counsel supplemented his motion with De La Garza's affidavit, but not even De La Garza stated that Ramirez would testify. Additionally, the court received no affidavit from Ramirez himself. De La Garza did not prove that he was entitled to severance, and the trial court properly denied his motion.

■ Ramirez moved for severance during trial, not in a pretrial motion as required by Federal Rule of Criminal Procedure 12(b)(5). Ramirez asserts that possible prejudice to him did not appear until the mid-trial introduction of Lopez's remote conviction. But it is well established that precise instructions, both during trial and in the jury charge, can cure such prejudice. *See, e.g., Williams*, 809 F.2d at 1084. Before admitting evidence of Lopez's prior conviction, the district court carefully instructed the jury to consider the evidence only with regard to Lopez. The district judge then repeated the limiting instruction when he delivered the jury charge. Through those instructions the district court cured any prejudice to Ramirez that might have arisen from admitting Lopez's prior conviction.

■ Ramirez also contends that the government could have plea bargained with him alone if there had been a severance. He asserts that the denial resulted in a harsher sentence than he would have received had he been tried separately. There is, however, no constitutional right to a plea bargain, and the prosecutor has the discretion either to bargain or to go to trial. *United States v. Rankin*, 572 F.2d 503 (5th Cir.), *cert. denied*, 439 U.S. 979, 99 S.Ct. 564, 58 L.Ed.2d 650 (1978).

Any prejudice arising from the admission of Lopez's conviction was cured by instruction, and no prejudice arose from the inability to accept a plea bargain. The district court did not abuse its discretion in denying Ramirez's Motion for Severance.

MOTION FOR NEW TRIAL: De La Garza

■ On July 18, 1991, the jury found De La Garza guilty of conspiracy. De La Garza subsequently obtained new counsel, who filed a Motion for New Trial on September 4, 1991. Before sentencing on October 10, 1991, the district court took up and denied the motion as untimely filed. Under Federal Rule of Criminal Procedure 33, a defendant's motion for new trial is timely only if it is filed within "7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period." Otherwise, a defendant

may file a motion for new trial within two years after final judgment, but solely on the ground of newly discovered evidence. The next day, De La Garza filed his Notice of Appeal, arguing that he was entitled to a new trial because the affidavit supporting the motion presented newly discovered evidence.

Ramirez's affidavit, which De La Garza uses to support his motion, does not satisfy the "newly discovered evidence" requirement, as detailed in *United States v. Alvarado*, 898 F.2d 987, 994 (5th Cir.1990). First, Rule 33 does not embrace affidavits as newly discovered evidence. Second, not only was the possibility of Ramirez's testimony known to De La Garza at trial, but it was also the subject of his pretrial Motion for Severance. Third, Ramirez's testimony would serve as some impeachment of Officer Botello's testimony, but it is not likely that it would lead to an acquittal. Fourth, the record suggests that De La Garza failed to exercise due diligence in obtaining the affidavit. When De La Garza's attorney first presented his Motion for Severance, the district court gave him a few minutes to obtain an affidavit from Ramirez that Ramirez would testify about De La Garza's innocence at a separate trial. De La Garza's attorney did not obtain such an affidavit until October 3, 1991, a full two and a half months after the verdict. Because the affidavit does not satisfy the requirements of newly discovered evidence, the trial court did not abuse its discretion in denying De La Garza's Motion for New Trial.

■ De La Garza additionally argues that the trial court "should have allowed the motion and given it proper consideration" under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In the first place, De La Garza's reliance on *Cronic* is misplaced. In *Cronic*, the defendant raised a claim of ineffective assistance of counsel in a motion for new trial that was filed two months after filing the notice of appeal. *Cronic*, 466 U.S. at 652, 104 S.Ct. at 2043. In a footnote, the Court explains that when a Rule 33 Motion for New Trial is filed pending

appeal, the trial court has the jurisdiction to entertain the motion, either by denying it or by certifying to the appellate court its intention to grant the motion. *Cronic*, 466 U.S. at 667 n. 42, 104 S.Ct. at 2051 n. 42; *see also* FED.R.CRIM.P. 33. This court followed *Cronic* in *United States v. Fuentes-Lozano*, 580 F.2d 724 (5th Cir.1978), *appeal after remand on other grounds*, 600 F.2d 552 (5th Cir.1979). De La Garza, however, filed his Motion for New Trial before filing the Notice of Appeal. Therefore, the procedure outlined in *Cronic* and in *Fuentes-Lozano* is inapplicable.

In the second place, although the trial court denied the Motion because it was untimely, the judge stated on the record proper alternative grounds for denial:

> [E]ven if the Court could consider this I would still deny it because it is not newly discovered evidence as that is enunciated in the case law.... This was evidence that was available at the trial and before the trial and is not something that has now all of a sudden been discovered by the defendant. In fact, he had explored it before the trial. And therefore, the Court would have denied it even if it were a timely filed motion for new trial.

## III. CONCLUSION

We affirm the convictions of all four defendants. The evidence is sufficient to sustain them. We also affirm the district court's decisions to admit the evidence of Lopez's remote conviction and to deny De La Garza's Motion for New Trial and De La Garza's and Ramirez's Motions for Severance.

AFFIRMED.