David BAUMANN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 392,2004.

Supreme Court of Delaware.

Submitted: Sept. 14, 2005.
Decided: Nov. 30, 2005.

John S. Edinger, Jr., Esquire, of the Office of the Public Defender, Wilmington, Delaware for Appellant.

Timothy J. Donovan, Jr., Esquire, of the Department of Justice, Wilmington, Delaware, for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

RIDGELY, Justice.

This is a direct appeal brought by defendant-appellant, David Baumann, from his conviction for aggravated harassment following a jury trial in the Superior Court. Baumann contends the trial judge erred by allowing the State to introduce impeachment evidence of a prior violation of a protection from abuse order and a harassment conviction. We find no abuse of discretion by the trial judge because Baumann opened the door for contradiction impeachment by his own defense. Accordingly, we affirm.

## I.

Baumann was arrested on charges of stalking and harassment after Trish Kerr reported him to the Wilmington Police De-

partment. Baumann and Kerr met in June 2003 and dated briefly. Kerr testified that she broke off the relationship and that Baumann then initiated a course of threatening behavior by making repeated phone calls to her and appearing at her home late at night.

Kerr's version of events was flatly denied by Baumann. He testified that he ended the relationship because he became engaged to Carol Pyle, a person he had been dating for four and a half years. In his defense he not only denied Kerr's charges but also gave details that Kerr had him arrested on the very same day that he told her he would not be seeing her anymore. The clear implication was that Kerr had him arrested in retaliation for his breaking up with her because of his engagement to Pyle.

Whether or not Baumann's relationship with Kerr ended because of his engagement to Pyle became a material issue in the case. On cross-examination, the prosecutor asked Baumann for more details about his relationship with Pyle and Kerr's motivation for making up a story. Baumann explained his engagement in further detail and Pyle's acceptance of a ring just days before he broke up with Kerr. He said that he and Pyle had not had any problems in their own relationship, though he did recall her boyfriend bullied her into getting a protection from abuse order against him which she never wanted. Baumann further testified that "a lot" of Kerr's testimony was "untrue" because her feelings were hurt even though he was kind to her. He then gratuitously added that he had "two daughters of my own, 26 and 24." The prosecutor then asked:

Q. What do your daughters have to do with whether Trish is lying or not?
A. Well, the point is, I always try to treat the ladies very nicely. And I

think Trish, closer to my daughter's age, like ten or twelve years, and you know, I think of her as a younger lady. And I was always very careful, more fatherly, and I would never want to hurt her feelings, never tried. That's why I always picked up the bills.

Q. Did I hear you correctly that you always treat ladies nicely?
A. I always try to be very nice.

The prosecutor had information to contradict Baumann's assertion. With permission from the trial judge, the prosecutor then asked Baumann if he had been convicted of violating a protection from abuse order in Pennsylvania. He did not recall. When asked if he recalled a harassment conviction in Delaware, Baumann did not recall that either. Both of these instances involved Carol Pyle.

In the State's rebuttal case, the prosecutor called Pyle to the witness stand. She testified that she was never engaged to Baumann, that he violated a protection from abuse order that she obtained against him in Pennsylvania, and that he harassed her.

The stalking charge was the only charge submitted to the jury by the trial judge with further instructions on the lesser-included offenses of aggravated harassment and harassment. The jury found Baumann guilty of aggravated harassment[1] and this appeal followed.

## II.

Baumann argues that the trial judge erred by allowing cross examination and rebuttal evidence regarding a violation of a protection from abuse order and a harassment conviction. He cites Delaware Rules of Evidence 608(b), 404(a) and 404(b) in support of his argument.

---

1. 11 Del. C. § 1312.

█ We review the Superior Court's rulings on the admission of evidence for abuse of discretion.[2] An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice.[3]

### A.

█ DRE 608 addresses evidence of character for truthfulness. Generally, the credibility of a witness may be attacked or supported by evidence of truthful character in the form of opinion or reputation. DRE 608(b) places limits on the use of extrinsic evidence of specific instances of conduct. It provides in pertinent part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." Baumann argues that the evidence of the violation of the protection from abuse order and harassment conviction was expressly prohibited by this language because the evidence proved specific instances of conduct to attack his credibility.

A literal reading of DRE 608(b) supports Baumann's argument. But this literal reading of the rule "could bar extrinsic evidence for bias, competency and contradiction impeachment, since they too deal with credibility."[4] This Court has previously held that DRE 608(b) does not bar evidence to establish that a witness has a motive to testify falsely.[5] In doing so, we rejected a literal reading of Rule 608(b) because, "the rule 'was intended to regulate only the use of specific instances of conduct to prove that the witness is a 'bad person' or is a generally untruthful person who should not be believed.'"[6] Consistent with our prior analysis of the intent of DRE 608, we hold that the absolute prohibition on extrinsic evidence of DRE 608(b) applies only if the sole purpose for the evidence being offered is to attack or support the character of the witness for general truthfulness. When impeachment evidence is offered to show bias, competency, or contradiction, the admissibility of that evidence is controlled by DRE 402 and 403.[7]

### B.

Under DRE 402 "[a]ll relevant evidence is admissible, except as otherwise provided

2. *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994).

3. *Id.* (citations and internal quotations omitted).

4. American Bar Association Section on Litigation, *Emerging Problems Under the Federal Rules of Evidence* 161 (3d ed.1998).

5. *Weber v. State*, 457 A.2d 674, 680 (Del. 1983).

6. *Weber* at 680 quoting *United States v. James*, 609 F.2d 36, 46 (2d Cir.1979).

7. *See United States v. Winchenbach*, 197 F.3d 548 (1st Cir.1999) (impeachment with proof of prior inconsistent statement is governed by Rule 403 not Rule 608(b)); *United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C.Cir.

1988) (Admissibility of extrinsic evidence offered to contradict a witness is governed by Rules 402 and 403, not Rule 608(b)): *United States v. Lopez*, 979 F.2d 1024 (5th Cir.1992) (Rule 403 controls the admission of contradiction evidence).

We note that Fed.R.Evid. 608(b) was amended in 2003 to substitute "character for truthfulness" for "credibility." This amendment conformed the language of the Federal Rule with the original intent of 608(b) which we recognized in *Weber v. State, supra.* As the Federal Advisory Committee stated, "[t]he amendment conforms the language of the Rule to its original intent, which was to impose an absolute bar on extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness' character for veracity." The DRE 608(b) and the Federal

by statute or by these rules or by other rules applicable in the courts of this State." Here the trial judge ruled on the relevance of the evidence of other wrongs after Baumann's direct testimony about his relationship with Pyle. The trial judge further gave a limiting instruction consistent with *Getz v. State* [8] because of the nature of the impeachment evidence involving other wrongs.[9] We find no abuse of discretion by the trial court in the admission of this impeachment evidence.[10]

## C.

Finally, we address admissibility under Rule 404(a) and (b). Delaware Rule of Evidence 404(a) protects a person by prohibiting a party opponent from offering "[e]vidence of a person's character or a trait of his character ... for the purpose of proving action in conformity therewith ..." A jury may not hear about a person's bad character, else they might punish him for his bad character rather than the issues at trial. As Rule 404(b) makes clear, Rule 404 does not act as an absolute bar to evidence of other crimes so long as such evidence has relevance beyond merely showing a character trait.[11] Rule 404 does not preclude a party opponent from presenting rebuttal evidence that a party has given false testimony to a jury about his own conduct which is at issue in the case.[12]

Rule now use different language even through the intent of the rules remains the same. We instruct the Clerk to provide a copy of this opinion to the Permanent Advisory Committee on the Delaware Uniform Rules of Evidence established by Supreme Court Rule 95 for consideration of whether a similar clarification in the language is appropriate for DRE 608(b) consistent with this opinion.

**8.** 538 A.2d 726 (Del.1988).

**9.** The trial judge instructed the jury as follows:

> Ladies and gentlemen of the jury, you have heard evidence concerning certain acts allegedly committed by the Defendant. These acts are in addition to the alleged acts which form the basis of the crimes for which the Defendant is now on trial.
>
> You may not consider evidence relating to these other crimes, wrongs, or acts allegedly committed by the Defendant for which he is not now on trial for the purpose of concluding that he is of a certain character, or possesses a certain character trait, and that he was acting in conformity with that character or character trait with respect to the crimes charged in this case. Similarly, you must not use the evidence to infer or conclude that the Defendant is a bad person, or that he has a predisposition to commit criminal acts, and that he is therefore probably guilty of the charged crimes.

**10.** We caution that our holding does not authorize a prosecutor to elicit denials on collateral issues during cross-examination to lay a trap which will be sprung in rebuttal. *C.f. United States v. Pantone*, 609 F.2d 675, 683 (3d Cir.1979). The trial judge retains discretion to exclude impeachment evidence of other wrongs under Rule 403. A prosecutor should seek permission out of the jury's presence as was done here before using such evidence.

**11.** *Deshields v. State*, 706 A.2d 502, 508 (Del. 1998) ("Trial courts must carefully examine offers of proof to insure that acts of other misconduct have independent logical relevance and do not further the purpose of showing predisposition to commit the crime charged.") quoting *Allen v. State*, 644 A.2d 982, 984–85 (Del.1994) (internal quotation omitted).

**12.** 28 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE, § 6119 at 116–17 (1993)

> Direct-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral. This approach has been justified on the grounds that the witness should not be per-

The limiting instruction by the trial judge ensured that the evidence would not be used for the improper purpose of showing bad character.

We find no abuse of discretion by the Superior Court in its evidentiary ruling on the facts of this case.

### III.

The judgment of the Superior Court is affirmed.

mitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

*quoted in United States v. Antonakeas,* 255 F.3d 714, 724 (9th Cir.2001); *United States v. Castillo,* 181 F.3d 1129, 1132–33 (9th Cir. 1999).

*See United States v. Dunnigan,* 944 F.2d 178, 182 (4th Cir.1991), *rev'd on other grounds,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (discussing Rule 404 and the admissibility of prior bad acts when "[a]ll of the 'similar acts' evidence presented on rebuttal was invited by Dunnigan. She denied using cocaine or knowing that anyone sold cocaine out of her house. The government was entitled to rebut these assertions."). *See also, Perryman v. H & R Trucking, Inc.,* 135 Fed. Appx. 538, 542 (3d Cir.2005) (affirming the District Court's allowing the party-opponent to impeach the witness by admitting evidence of his prior conviction and incarceration after the witness lied at trial in order to conceal the fact that he had been incarcerated).