Affirmed and Memorandum Opinion filed June 28, 2007








Affirmed
and Memorandum Opinion filed June 28, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01134-CR

____________

 

RICHARD DANIEL HASSENPLUG, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 998838

 



 

M E M O R A N D U M    O P I N I O N

Appellant Richard Daniel Hassenplug was convicted for the
felony offense of indecency with a child, and the jury assessed punishment at
twenty years= confinement in the Texas Department of Criminal
Justice, Institutional Division.  Appellant contends on appeal that the trial
court erred by admitting evidence of extraneous offenses during the
guilt/innocence phase of trial and by failing to instruct the jury on the
burden of proof for extraneous offenses at the punishment phase of trial. 
Appellant also argues that he received ineffective assistance of counsel
throughout his trial.  We affirm. 








I.  Factual and Procedural History

On July 4, 2004, the complainant=s mother received
a telephone call from a relative in Florida that caused her concern regarding
the conduct of her uncle, appellant Richard Daniel Hassenplug, towards her two
minor daughters during the previous summer.  One daughter, E.V., subsequently gave
a videotaped interview to a forensic interviewer at the Children=s Assessment
Center.  As a result of E.V.=s statements, appellant was indicted for
indecency with a child by contact for causing E.V. to touch his genitals. 

Before trial, the State informed appellant of its intent to
call six out-of-state witnesses to present evidence that appellant had
repeatedly committed acts of indecency with children in Florida since 1968. 
Appellant=s defense counsel filed pretrial objections and a
motion in limine regarding the use of such testimony.

At trial, Detective Joe Stephens of the Pasadena Police
Department testified that he was assigned to the case on July 14, 2004, based
on information received from another state. He reviewed the videotaped
interview of E.V. performed by forensic interviewer Lisa Holcomb.  After
Stephens testified, the trial court conducted a hearing on appellant=s motion in limine
regarding extraneous-offense evidence outside the presence of the jury.  After
the State represented to the court that it would not present evidence of
extraneous offenses committed in Florida, the trial court denied appellant=s motion.








When the trial resumed, E.V. testified that in the summer
of 2003, when she was six years old, appellant touched her genitals under her
clothes using his hand.  According to E.V., her sister was present on this
occasion.  She further testified that on a prior occasion appellant woke E.V.
and made her touch his Aprivate,@ which E.V. said
felt Ahard@ and which she
compared to a cucumber.  According to E.V., her sister was asleep in the
adjacent bed during this incident.  E.V. also testified that appellant brought
pornographic movies to her home and showed them to the two girls while
babysitting them.  According to E.V., appellant Ahumped the floor@ while watching
the movie with the children.  E.V. further testified that appellant showed the
girls pornographic drawings of cartoon characters.  She also stated that
appellant wore a women=s pair of red underwear that exposed his
buttocks and then made her wear the same garment.  She testified that appellant
put his private part between her legs while she was in bed at night.  E.V.
further testified that on two occasions appellant photographed her while she
was changing clothes.  

E.V.=s mother testified that E.V. had described
the same events to her.  E.V.=s sister C.V.  also testified that
appellant brought pornographic movies with him to the girls= home and watched
them with the children when their parents were not home.  She offered a
description of appellant=s behavior during the movie that was
similar to the description given by E.V. and also testified that appellant wore
women=s red underwear. 
C.V. further testified that appellant showed her pornographic cartoon drawings
and a photograph of a woman having sex with a horse.  Although C.V. stated that
she never saw appellant with a camera, she testified that she saw him touch
E.V. Ain the private
part@ while E.V. pushed
him and tried to get away from him.  Finally, C.V. testified that appellant had
also grabbed her hand and placed it on his genitals.[1]








Appellant=s brother Paul Hassenplug testified that
appellant had lived with him for most of the last ten years.  According to
Paul, he had seen appellant around women and children many times and had never
observed him behaving inappropriately on these occasions.  When asked, A[h]ave you had occasion
to see him in these context[s] on many occasions?@ appellant=s brother replied,
AThat=s a fact.  I mean,
nobody in my whole family has ever seen him do anythingC@ At this point,
the State objected that the answer was nonresponsive and constituted improper
character evidence, and the trial court sustained the objections.  Neither
appellant nor the State requested the trial court to instruct the jury to
disregard this testimony, and the trial court did not give such an
instruction.  When the defense passed the witness, the State argued that this
line of questioning had opened the door to evidence of extraneous offenses.

Outside of the jury=s presence,
appellant=s attorney argued that extraneous-offense evidence
would be inflammatory and prejudicial.  After conducting an evidentiary
hearing, the trial court stated that it would permit one of appellant=s nephews and two
of his nieces to testify in the State=s rebuttal case.  

When the trial resumed, Paul finished testifying, and then
appellant took the stand. Appellant testified that he was honorably discharged
from the United States Navy in 1967.  He further testified that he had a stroke
in 1988 and a second stroke nine years later.  Appellant stated that he began
having seizures in 1995 and presented medical records from January 29, 2004,
which indicated that he was diagnosed as impotent and suffered from erectile
dysfunction.  Appellant testified that he was first diagnosed with impotence in
late 1997 or early 1998 and that treatment with Viagra and testosterone was
unsuccessful.  According to appellant, he had not had an erection since 1998. 
He denied all of the allegations against him and testified that there was a
conspiracy against him. 

On rebuttal, appellant=s nine-year old
niece, H.T., testified that in 2004, appellant touched her privates and asked
her to touch his erect penis.  She further testified that appellant told her
about taking pictures of young girls and about having sex.  According to H.T.,
appellant told her that when he lived with E.V.=s family, he had
oral sex with E.V. and that she rubbed his penis. Finally, H.T. testified that
appellant tried to put his genitals between her legs when she was sleeping. 
H.T.=s eight-year old
brother J.T. testified that appellant exposed himself to J.T., to H.T., and to
one of his cousins at the same family gathering.  He could not remember if this
cousin was the complainant E.V. or her sister C.V.








Nineteen-year old S.O., another of appellant=s nieces, testified
that when she was thirteen, appellant asked her if she wanted to watch a
pornographic movie, but she declined.  She further testified that she once
spent the night at the mobile home appellant shared with his brother and she
woke to find appellant rubbing her privates.  At that time, she was
approximately fourteen years old.  According to S.O., appellant repeated the
behavior during a family gathering when S.O. was sixteen years old, even though
she had taken the precaution of sleeping in a bed in between her older brother
and a male cousin.

Appellant was convicted of indecency with a child.  During
the punishment phase of trial, the State offered the testimony of two adult
witnesses who testified in detail about additional unadjudicated sexual offenses. 
Appellant=s niece K.S. testified that thirty years earlier,
appellant molested her in a van in Florida while her father remained outside
the van speaking with a police officer about a traffic accident.  K.S. also
testified that when she was nine years old, appellant forced her to perform
oral sex on him.  She also stated that when she was twelve years old, she was
visiting appellant=s family and appellant woke her and had
sex with her.  She further testified that when she was fifteen years old, she
saw appellant touch the genitals of two sleeping girls who were friends of the
family; according to K.S., the girls were nine and twelve years old at the
time.

Appellant=s former sister-in-law L.S. testified that
appellant had touched her genitals more than thirty-seven years earlier, when
L.S. was approximately seven years old.  L.S. is eight years younger than her
sister Brenda, who was married to appellant at the time, and because Brenda
cared for L.S. while their mother worked, L.S. often stayed at the home Brenda
and appellant shared.  According to L.S., appellant would get into bed with her
at night and put his penis between her legs.  She testified that this behavior
occurred from the time she was nine years old until she was twelve.  According
to L.S., appellant last molested her thirty years earlier, when she was fifteen
years old.  Both K.S. and L.S. testified to the harmful effects they suffered
as a result of appellant=s actions.  

The jury assessed a $10,000 fine and assessed punishment at
twenty years= imprisonment.  








II.  Issues
Presented 

Appellant presents five issues for our review.  In his
first issue, he argues the trial court abused its discretion in admitting
testimony regarding third-party extraneous offenses of indecency with a child
to show his propensity to commit such an offense.  Appellant argues in his
second issue that the trial court abused its discretion in admitting the State=s evidence of
extraneous offenses in violation of Texas Rule of Evidence 403.  In his third
issue, appellant contends the trial court reversibly erred by failing to
instruct the jury on the burden of proof regarding extraneous-offense evidence
during the punishment phase of trial.  In his fourth and fifth issues,
appellant argues he was denied effective assistance of counsel at both phases
of trial as guaranteed by the Texas and United States Constitutions.  For the
sake of clarity, we discuss the issues in chronological order rather than in
the order presented.

III.  Analysis

A.      The
Guilt/Innocence Phase of Trial

1.       Evidence
of Extraneous Offenses 

When reviewing  a trial court=s decision to
admit evidence of extraneous offenses, we  will reverse only if the trial court
abused its discretion.  Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim.
App. 2003).  In making this determination, we consider whether the court acted
without reference to guiding rules and principlesCthat is, whether
the court acted arbitrarily or unreasonably.  Lyles v. State, 850 S.W.2d
497, 502 (Tex. Crim. App. 1993) (en banc).  We must uphold the trial court=s ruling if it is Awithin the zone of
reasonable disagreement.@  Wheeler v. State, 67 S.W.3d 879,
888 (Tex. Crim. App. 2002) (en banc).  We apply the same deferential standard
to our review of the trial court=s determination
that the probative value of the evidence is not outweighed by the danger of
unfair prejudice.  Moses, 105 S.W.3d at 627. 








a.       Paul Hassenplug=s Testimony

Appellant contends in his first issue that the trial court
abused its discretion in admitting testimony regarding third-party extraneous
offenses of indecency with a child because the testimony only tended to show
his propensity to commit the offense of indecency with a child.  Although
appellant=s arguments indicate otherwise, appellant did not
voice any of the following objections in the trial court regarding the
testimony of the three witnesses in the State=s rebuttal case:
(1) that their testimony was not relevant, (2) that their testimony only tended
to show appellant=s propensity to commit the offense of
indecency with a child, or (3) that their testimony was inadmissible character
evidence under Texas Rule of Evidence 404.  Therefore, appellant did not
preserve error as to these complaints.  See Tex. R. App. P. 33.1; Heidelburg v. State, 144 S.W.3d
535, 537 (Tex. Crim. App. 2004) (en banc) (stating A[i]t is
well-settled that the legal basis of a complaint raised on appeal cannot vary
from that raised at trial@).  Appellant did preserve error as to the
following two complaints regarding the testimony in the State=s rebuttal case:
(1) the testimony of Paul Hassenplug did not create a false impression, and (2)
the prejudicial nature of this testimony outweighed its probative value.  

As to the first complaint, Paul Hassenplug testified on
direct examination during appellant=s case-in-chief as
follows:

!       Paul is appellant=s brother, and the two men have
lived together in Florida consistently for the last ten years.  

!       Paul has had occasion to observe appellant at
family gatherings Aall the time@ and on Amany occasions.@

!       Paul observed appellant around females and
children on Amany occasions.@

!       Paul has never observed appellant act
inappropriately around a female  or a child.  

!       Paul has
observed appellant in these contexts on many occasions, and Anobody in [his]
whole family has ever seen [appellant] do anythingC@








Appellant asserts that Paul=s testimony was
based on his personal knowledge from living in the same home with appellant for
ten years and on his personal observations at family gatherings that included
females and children.  While these statements are true as to most of Paul=s testimony on
direct examination, Paul also made a statement that gave the jury the
impression that no one in Paul=s entire family had ever seen appellant do
anything inappropriate around a child.[2] 
If Paul=s statement were
correct, then significant portions of the testimony of complainant and her
sister in the State=s case-in-chief were false, as wer various
parts of the three witnesses= testimony during the State=s rebuttal case. 
Therefore, we hold that the trial court did not abuse its discretion in
concluding that Paul=s testimony created a false impression as
to the observations of Paul=s family members regarding appellant=s behavior around
women and children.  See Daggett v. State, 187 S.W.3d 444, 453 n.24
(Tex. Crim. App. 2005) (stating that, when a witness testifies to good conduct
by the defendant in a manner directly relevant to the charged offense, this
testimony can open the door for the State to offer extrinsic evidence to rebut
the statement); cf. United States v. Antonakeas, 255 F.3d 714, 724B25 (9th Cir. 2001)
(concluding that, under analogous Federal Rules of Evidence, testimony during
direct examination in defendant=s case-in-chief created a false impression
that defendant had a history of non-involvement with illegal drugs); Baumann
v. State, 891 A.2d 146, 147B49 (Del. 2005) (applying Delaware=s similar rules of
evidence and concluding that testimony that defendant always tries to treat
women very nicely created a false impression about defendant=s conduct toward
women).  Because appellant=s argument under the first issue that was
preserved in the trial court lacks merit, we overrule appellant=s first issue.[3]








b.       Rule 403
Balancing Test








In his second issue, appellant contends the trial court
abused its discretion in determining that the probative value of the testimony
of the State=s rebuttal witnesses was not substantially outweighed
by the danger of unfair prejudice.  See Tex. R. Evid. 403.  A Rule 403 analysis as to unfair
prejudice requires the trial court to balance (1) the probative value of the
evidence, (2) the potential of the evidence to impress the jury in an
irrational but indelible way, (3) the time needed to develop the evidence, and
(4) the proponent=s need for the evidence.  Erazo v.
State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  Although appellant
suggests in his brief that the trial court did not conduct a Rule 403 balancing
test, there is no evidence in the record to support this contention.  See
Williams v. State, 958 S.W.2d 186, 195B96 (Tex. Crim.
App. 1997) (en banc) (stating that trial court is presumed to have performed
balancing test if it overrules an objection under Rule 403); Howland v.
State, 966 S.W.2d 98, 103 (Tex. App.CHouston [1st
Dist.] 1998) (noting that the trial court Aneed not conduct a
formal hearing or even announce on the record that it has mentally conducted
this balancing test@), aff=d, 990 S.W.2d 274
(Tex. Crim. App. 1999).  The testimony of the rebuttal witnesses was highly
probative of the veracity of Paul=s statement
indicating that none of his family members had ever seen appellant do anything
inappropriate around a child.  Measuring the trial court=s ruling against
the relevant criteria by which a Rule 403 decision is made, we conclude the
trial court did not abuse its discretion in determining that the probative
value of the rebuttal evidence was not substantially outweighed by the danger
of unfair prejudice.  See Page v. State, 213 S.W.3d 332, 337B38 (Tex. Crim.
App. 2006) (holding  trial court did not abuse its discretion in concluding
that probative value of extraneous sexual-assault offenses was not
substantially outweighed by the danger of unfair prejudice).  Accordingly, we overrule
appellant=s second issue.[4]

2.       Ineffective Assistance of Counsel

Appellant argues
that he was denied effective assistance of counsel during the guilt/innocence
phase of trial under both the State and federal Constitutions because his trial
counsel (a) opened the door to third-party extraneous-offense evidence, (b) failed
to request a mid-trial limiting instruction for extraneous-offense evidence or
to object to the written jury instruction that broadened the theory of
admissibility of the extraneous-offense evidence, and (c) failed to object to
an untimely jury shuffle.  We review appellant=s claim of
ineffective assistance of counsel under the standard set forth in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). 
Under Strickland, an appellant must prove by a preponderance of
the evidence that counsel=s representation fell below the objective
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at 687, 104 S.
Ct. at 2064.  This test applies to claims arising under the Texas Constitution
as well as those arising under the United States Constitution.  Hernandez v.
State, 726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986) (en banc).








Confronted with a
silent record, we must begin our review with the strong presumption that
counsel=s actions were
motivated by sound trial strategy, and we will not conclude the representation
was deficient unless the attorney=s conduct was so
outrageous that no competent attorney would have engaged in it.  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  We sustain
allegations of ineffective assistance only if firmly founded in a record that
affirmatively demonstrates the alleged ineffectiveness.  McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (en banc), abrogated on other
grounds by Mosley v. State, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998)
(en banc).  The record on direct appeal is usually inadequate to overcome the
presumption and show that counsel=s conduct fell
below an objectively reasonable standard of performance.  Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  But if the attorney=s conduct was so
outrageous that no competent attorney would have engaged in it, counsel=s performance
falls below an objective standard of reasonableness as a matter of law,
regardless of whether the record adequately reflects the attorney=s subjective
reasons for the act or omission.  Goodspeed, 187 S.W.3d at 392.

a.       Opening the Door to Admission of Third-Party
Extraneous Offense Evidence

Appellant first
argues that his trial counsel was ineffective because he opened the door to the
admission of extraneous-offense evidence by eliciting testimony from Paul
Hassenplug that Anobody in my whole family has ever seen
him do anything[.]@  However, this testimony was not elicited
by appellant=s trial counsel, but was volunteered by the witness. 
Moreover, even if appellant=s trial counsel had engaged in conduct
that resulted in the admission of the testimony from the State=s rebuttal
witnesses, appellant has not shown by a preponderance of the evidence that
there is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.  

b.       Failure to Request that the Trial Court Conduct
a Balancing Test under Rule 403








Appellant also
asserts that the trial court overruled his Rule 403 objection to the testimony
of the State=s rebuttal witnesses without conducting a balancing
test and that appellant=s trial counsel was ineffective for not
requesting the trial court to perform the balancing test.  However, because the
trial court overruled appellant=s Rule 403 objection, we presume that it
did conduct a balancing test under this rule.  See Williams, 958 S.W.2d
at 195B96.  Therefore,
appellant=s counsel cannot have been ineffective in failing to
request the trial court to perform this balancing test.

                   c.       Failure to Request a
Limiting Instruction or Object to the Written Jury Instruction Regarding
Extraneous-Offense Evidence

During the
guilt/innocence phase of trial, the jury received a limiting instruction
regarding extraneous offenses.  Here, appellant argues that his defense counsel
rendered ineffective assistance because he failed to object to this limiting
instruction on the ground that it included theories of admissibility for the
rebuttal testimony that went beyond those asserted by the State.  Appellant
also alleges that his trial counsel was ineffective in failing to request a
mid-trial limiting instruction regarding evidence of extraneous offenses.  See
Tex. R. Evid. 105(a).  

The record
contains no evidence regarding the reasons appellant=s defense counsel
chose not to take such actions, but the attorney=s conduct in
failing to take these actions was not so outrageous that no competent attorney
would have done so.  Goodspeed, 187 S.W.3d at 392.  On the record before
us, we cannot conclude that defense counsel=s actions
constituted ineffective assistance.  See Garcia v. State, 887 S.W.2d
862, 881 (Tex. Crim. App. 1994) (en banc) (holding that a decision not to
request a limiting instruction was not an unreasonable trial strategy because
such a request might Adraw more attention to the incriminating
evidence in the statements@), abrogated on other grounds by
Hammock v. State, 46 S.W.3d 889 (Tex. Crim. App. 2001).  In addition,
appellant has not shown a reasonable probability that, but for the alleged
deficiency, the result of the proceeding would have been different.  Strickland,
466 U.S.at 687, 104 S. Ct. at 2064.  

d.       Failure to Object to the Jury Shuffle








Appellant also
argues that his trial counsel rendered ineffective assistance by failing to
object to the timing or manner of a jury shuffle performed after voir dire. 
However, it was appellant=s trial counsel who requested the jury
shuffle through a written motion filed more than six months before trial. 
Although the record does not contain a signed order on the motion, the motion
was granted in open court.  Under the applicable standard of review, we must
presume that trial counsel had a sound trial strategy for failing to object to
actions taken by the trial court at counsel=s own request.[5] 
There is no evidence in the record supporting appellant=s claims that
these actions were not motivated by a sound trial strategy, and we conclude
that failing to object to such a jury shuffle was not so outrageous that no
competent attorney would have engaged in that conduct.  Goodspeed, 187
S.W.3d at 392.  Accordingly, we overrule appellant=s fourth and fifth
issues as they pertain to claims of ineffective assistance of counsel at the
guilt/innocence phase of trial.

B.      The
Punishment Phase of Trial

Appellant next
contends that he is entitled to a new punishment trial because the trial court
failed to instruct the jury that it must find beyond a reasonable doubt that
appellant committed extraneous offenses before it could consider evidence of
such offenses in assessing punishment.  Appellant similarly argues that his
attorney=s failure to
object to the omission of such an instruction constitutes ineffective
assistance of counsel.  To analyze these issues, we must begin by determining
whether the omission of the instruction constituted error.

1.       Charge Error by the Trial Court








During the
punishment phase of trial, the State may offer evidence of the defendant=s extraneous
offenses that are Ashown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held
criminally responsible . . . .@  Tex. Code Crim. Proc. Ann. art. 37.07 ' 3(a)(1) (Vernon
2006) (emphasis added).  If extraneous-offense evidence is admitted during the
punishment phase of trial, then the trial court is required to give the jury a
reasonable-doubt instruction even if none is requested by defense counsel.  Huizar
v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000).  Here, the jury charge
contained no such instruction.  Thus, the trial court erred in omitting this
instruction from the jury charge.  

The State argues
that the extraneous offenses are same-transaction contextual evidence, and
thus, the reasonable-doubt instruction was not required.  We disagree. 
Same-transaction contextual evidence is evidence that Aimparts to the
trier of fact information essential to understanding the context and
circumstances of events which, although legally separate offenses, are blended
or interwoven.@  Camacho v. State, 864 S.W.2d 524, 532 (Tex.
Crim. App. 1993) (en banc).  It is admissible A[o]nly if the
facts and circumstances of the instant offense would make little or no sense
without also bringing in the same[-] transaction contextual
evidence . . . .@  Rogers v.
State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (en banc).

None of the
occurrences described by the extraneous-offense witnesses form part of the same
transaction as the offense for which appellant was convicted.  None of them
were performed in the same State or in the same year as the charged offense. 
To the contrary, the offenses are separated geographically by several states
and by a temporal gap that spans as much as a generation; at the time of some
of the offenses, the complainant in the instant case was not even born. 
Moreover, if the extraneous-offense evidence was needed to understand the
circumstances of the charged offense, then the State presumably would have
offered its extraneous-offense witnesses in its case-in-chief.  At that time,
the State apparently found this evidence unnecessary to the jury=s understanding of
the facts concerning the charged offense.  We agree with that determination.

We therefore
conclude that the extraneous-offense evidence was not same-transaction
contextual evidence, and thus, a reasonable-doubt instruction was required. 
Because the instruction was omitted, we must analyze the resulting harm, if
any. 








2.       Harm Analysis

The standard of
review for errors in the jury charge varies according to whether the defendant
properly objected.  See Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (en banc) (op. on reh=g).  AIf the error in
the charge was the subject of a timely objection in the trial court, then
reversal is required if the error is >calculated to
injure the rights of defendant,= which means no more than that there must
be some harm to the accused from the error.@  Id.  If a
proper objection was not made at trial, reversal is required only if the error
is so egregious and created such harm that the defendant was denied a fair and
impartial trial.  Id.  

Here, appellant=s trial counsel
affirmatively stated he had no objection to the charge;[6]
thus, we may not reverse based on the trial court=s error unless it
caused appellant egregious harm.  To determine the degree of harm, we review
the record as a whole to Ailluminate the actual, not just
theoretical, harm to the accused.@  Id. at
174.  Harm is assayed in light of (a) the entire jury charge; (b) the
state of the evidence, including the contested issues, and weight of probative
evidence; (c) the arguments of counsel; and (d) any other relevant information
revealed by the record of the trial as a whole.  Id. at 171.  In
conducting our review, we focus on the effect of the instruction=s omission, and
not only the evidence at issue.  See Ellison v. State, 97 S.W.3d 698,
701 (Tex. App.CTexarkana 2003, no pet.).  

We first note that
appellant complains of no other error in the jury charge.  Moreover, the day
before the punishment phase began, the jury was instructed at the close of the
guilt/innocence phase of trial to consider evidence of extraneous offenses only
if it found, beyond a reasonable doubt, that the defendant had committed the
extraneous offenses.  Thus, no other charge error increased the harm to
appellant from the omission of a reasonable-doubt instruction regarding
extraneous-offense evidence.








Second, at the
time of the punishment-phase charge error, the jury had already found appellant
guilty beyond a reasonable doubt of the offense of indecency with a child;
thus, the contested issue was the appropriate punishment.  In considering this
issue, the jury was permitted to consider the evidence presented at the
guilt/innocence phase of trial as well as the punishment-phase evidence and
jury charge.  Although a jury could consider appellant=s age,[7]
his honorable military service,[8]
and the absence of prior convictions as evidence indicating that a shorter
sentence might be appropriate, the evidence also presented countervailing
considerations.  For example, the jury could consider the extreme youth of the
complainant at the time of the offense, the defendant=s position as a
trusted relative, his status as a guest in the complainant=s home, and his
willingness to commit such an offense even at the risk of being detected by
another witness.  These relevant factors were not affected by charge error.








We next examine
the arguments of counsel, and note that the prosecutor emphasized the
extraneous-offense evidence in arguing for the maximum sentence of twenty years= confinement and a
$10,000 fine.  Specifically, the State argued that appellant is a Aserial pedophile@ who had Avictimized nine
people@ over a period of
thirty-seven years.[9] 
Speaking of the minor witnesses E.V., C.V., H.T., and J.T., the prosecutor
argued, Adon=t let them go
through the struggle that [L.S.] has gone through and [K.S.] has gone through. 
You have the opportunity as you sit here as 12 individuals to stop this cycle. 
Because this is a perfect case to describe how pedophiles can infiltrate a
family and destroy it.@  We note that at the time the prosecutor
made these arguments, the jury was already familiar with the arguments, because
at the close of the guilt/innocence phase of trial, in which a reasonable-doubt
instruction was given, the State presented a similar theme but without the
addition of the adult witness extraneous-offense evidence offered during the
punishment phase of trial: 

This family, they
cared about their family reunions.  They were close.  They loved each other. 
There is no [sic] absolutely zilch motive that any of these people would make
it up against him.  I mean, is it pure coincidental [sic] that people from all
over the country were affected by him?[[10]] 
He left quite a road map.  He=s left quite a trail of things that have
happened . . . . He is the perfect definition of a pedophile.  He is grooming
the people that he is around.  

Although the
additional extraneous-offense testimony offered during the punishment phase of
trial arguably strengthened this theme by including evidence of more serious
offenses committed a generation earlier, appellant=s attorney
reminded the jury that, although extraneous offenses had been alleged, the
merits of those allegations had not been determined.  Of course, Ajury argument is
not a substitute for a proper jury charge.@  Arline v.
State, 721 S.W.2d 348, 353 n.8 (Tex. Crim. App. 1986) (en banc).  Thus,
this reminder that the extraneous offenses had not been proved does not
eliminate charge error.  But just as the argument by appellant=s counsel does not
determine the absence of harm, the arguments of the State emphasizing
extraneous offenses does not alone establish harm.  A[J]ury argument is
never alone a controlling factor in an Almanza harm analysis.@  Hutch v.
State, 922 S.W.2d 166, 174 (Tex. Crim. App. 1996) (en banc).  Rather, it is
only one factor to be considered in deciding if an accused has suffered
egregious harm.  Ruiz v. State, 753 S.W.2d 681, 686 (Tex. Crim. App.
1988) (en banc).








Finally, we
consider any other evidence revealed by the record of the trial as a whole.
During the guilt/innocence phase of trial, five of appellant=s relatives
testified that he had engaged in sexually inappropriate behavior with them; all
of them were children at the time of the offenses, and the jury received a
reasonable-doubt instruction regarding these extraneous offenses the day before
the punishment phase.  See Gholson v. State, 5 S.W.3d 266, 271 (Tex.
App.CHouston [14th
Dist.] 1999, pet. ref=d).  This evidence is sufficient to
support the State=s theme that appellant is a serial
offender who preys on his own family and justify the imposition of the maximum
sentence.  Equally important, we note that appellant was asked during the
punishment phase of trial, Aif the jury would see fit to order that
you have no contact whatsoever with any children, would you have any problem
with that?@  Appellant responded, AAbsolutely none.  Well,
I may have reservations, you know, on family members, but if I have to do
that, I=ll abide by it.@ (emphasis
added).  Appellant=s reluctance to accept restrictions that
would protect the very population from which the complainant was drawn offered
further encouragement to the jury to confine appellant for as long as the law
allowed.  Finally, although appellant stated that he accepted the jury=s finding of
guilt, he also testified that each of the witnesses against him was lying, and
reiterated that A[i]t just seems too coincidental that they
all seem to have the same story line and sometimes almost the exact same words.@  The jury easily
could have interpreted this testimony as a failure by appellant to accept
responsibility for his criminal behavior.








After reviewing
the record as a whole, we cannot conclude that the trial court=s error in failing
to instruct the jury in the punishment-phase charge concerning the extraneous-
offense burden of proof is so egregious and created such harm that appellant
did not receive a fair and impartial trial.  See Almanza, 686 S.W.2d at
171.  The record reflects that appellant=s trial counsel
vigorously defended him.  Allen v. State, 47 S.W.3d 47, 51 (Tex. App.CFort Worth 2001,
pet. ref=d) (considering
the defense attorney=s vigorous defense as a factor in
determining whether the absence of the extraneous offense instruction in the
punishment phase of trial denied the appellant a fair trial).  The jury=s assessment of
the maximum sentence does not by itself prove egregious harm.[11] 
The jury would have been justified in assessing the maximum penalty based
solely on the facts and circumstances surrounding appellant=s commission of
the charged offense.[12] 
On this record, we cannot say it is likely that the jury was more prone to give
consideration and weight to the extraneous offenses in the absence of a
reasonable-doubt instruction than it would have done if such an instruction had
been given, nor does appellant contend that, if a proper instruction had been
given, the evidence was insufficient to prove beyond a reasonable doubt that he
committed the extraneous offenses.[13] 


Accordingly, we
overrule appellant=s third issue.

3.       Ineffective Assistance of Counsel

Finally, appellant
argues that his defense attorney rendered ineffective assistance by failing to
object during the punishment phase of trial to the omission of a
reasonable-doubt instruction concerning extraneous-offense evidence.  In
assessing this argument, we again begin with the strong presumption that trial
counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999).  The record contains no evidence regarding the reasons appellant=s defense counsel
chose not to assert this objection tothe punishment-phase charge.  His attorney=s conduct in
failing to do so was not so outrageous that no competent attorney would have
done so.  Goodspeed, 187 S.W.3d at 392.  On the record before us, we
cannot conclude that defense counsel=s failure to
object in this regard constituted ineffective assistance.  See Garcia,
887 S.W.2d at 881; Gholson, 5 S.W.3d at 273.  








In addition,
appellant has not shown a reasonable probability that, but for the alleged
deficiency, the result of the proceeding would have been different.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  Although appellant received the maximum
sentence, our legislature has determined that such a sentence is within the
range appropriate for the charged offense.  There is no evidence in the record
that the jury reached its sentencing decision by relying on evidence of
extraneous offenses that it failed to find, beyond a reasonable doubt, that
appellant committed.  The jury could have reached the same result by relying
solely on the evidence presented during the guilt/innocence phase of trial, in
which the jury was given a reasonable-doubt instruction regarding extraneous
offenses.  This includes evidence that the complainant was six years old at the
time of the offense, that appellant was a trusted relative, and that he was an
invited guest in the complainant=s home at the time
of the offense.  The jury could also consider the evidence previously
discussed, such as appellant=s reluctance to accept restrictions that
would remove him from the presence of the children in his family and his
insistence that each of the seven nieces and nephews who testified against him
were lying.  Based on the totality of the evidence, the jury could have
appropriately decided that appellant=s offense, his
failure to accept responsibility, and the continuing threat he posed to his
young relatives justified the most severe sentence. 

On the record
before us, we conclude appellant has failed to establish that his defense attorney
rendered ineffective assistance of counsel, and we overrule appellant=s fourth and fifth
issues.

IV.  Conclusion

Because the record
does not demonstrate reversible error, we affirm the judgment of the trial court.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Memorandum Opinion filed June 28, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The record does not indicate that appellant was
charged with this alleged offense.





[2]  Paul also testified that Paulhe was not in Texas
during 2003, which is when the charged offense occurred; however, Paul=s relative Jennifer Hassenplug and her kidschildren
were in Texas at that time.  Thus, Paul=sis
testimony suggestedindicated to the jury that even the family members who were
here in Texas when appellant allegedly committed the charged offense had never
seen appellant behavedo anything inappropriately around a child.  





[3]  On appeal, appellant also asserts Paul=s testimony did not create a false impression because
the facts of this case are distinguishable from those in Wheeler v. State,
67 S.W.3d 879 (Tex. Crim. App. 2002) (en banc), and because  Paul did not offer
expert or opinion testimony.  However, these assertions, even if true, do not
prevent Paul=s testimony from creating a false impression.





[4]  We note that appellant did not preserve error in the
trial court as to whether the trial court abused its discretion in determining
that Paul=s testimony opened the door for the testimony of the
rebuttal witnesses.  In any event, even if error had been preserved in this
regard, we would not conclude that the trial court reversibly erred.





[5]  Although appellant contends that the jury shuffle Aso disrupted the record to prevent [a]ppellant from
seeking review on appeal[,]@ he has
identified no challenges to potential jurors that the shuffle prevented him
from asserting.





[6]  An attorney=s
affirmative statement that the defense has no objection to the jury charge is
the equivalent of a failure to object to the charge.  Bluitt v. State,
137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (en banc).





[7]  Appellant was fifty-nine years old at the time of
trial.





[8]  Appellant served in Vietnam on three separate
occasions and received the Armed Forces Expeditionary Medal, a National Defense
Service Medal, a Vietnam Service Medal, and a Vietnam Campaign Medal.





[9]  We presume that the State referred to appellant=s niece E.V.; her sister C.V.; her cousins H.T., J.T.,
and S.O.; appellant=s niece K.S.; two unidentified friends of K.S.
mentioned in her testimony; and appellant=s
former sister-in-law L.S.





[10]  The extraneous-offense witnesses all testified to
events that allegedly occurred in Florida.





[11]  See Huizar v. State, 29 S.W.3d 249, 251 (Tex.
App.CSan Antonio 2000, pet. ref=d) (concluding there was no egregious harm even though
jury assessed punishment for aggravated sexual assault at ninety-nine years= confinement). 





[12]  See Allen, 47 S.W.3d at 52.





[13]  See Gholson v. State, 5 S.W.3d 266,at
271. (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).