Jose D. BEZAREZ, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 618,2008.

Supreme Court of Delaware.

Submitted: Aug. 12, 2009.

Decided: Oct. 30, 2009.

Nicole M. Walker, Esquire (argued), Office of the Public Defender, Wilmington, DE, for Appellant.

Timothy J. Donovan, Jr., Esquire (argued) Department of Justice, Wilmington, DE, for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this criminal appeal, we consider whether the Superior Court abused its discretion in admitting evidence of prior "bad acts." Appellant admitted that he shot and killed a fellow drug dealer, but he claimed that the shooting was an accident. Appellant testified that the trigger on his gun was light and that the gun fired (twice) during a scuffle with the victim. The trial court allowed the State, in rebuttal, to introduce evidence that appellant had fired the gun three weeks before the killing. We conclude that the trial court did not abuse its discretion in admitting extrinsic evidence bearing on appellant's accident defense.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 24, 2007, Jose Bezarez and his partner, "Dolte," were visiting at Audrey Harris's house. The two men were watching movies and playing video games with several children, including Bezarez's 15-year-old "godson," Darren Hunt, and Darren's 14-year-old brother, Day–Von Hunt. At some point, the Hunt brothers, Bezarez, and Dolte went out to get food and conduct business. Bezarez took his gun along for protection, but someone else was holding it for him.

Bezarez sold $6,500 in drugs and also spent some time getting high. As the two men and two boys were walking through the parking lot of the Tu Rancho Jubilee restaurant, Bezarez saw Michael, Ramon and Maximo Campusano. Bezarez had purchased $11,000 of "bad" cocaine from the Campusanos in early January. Since then, Bezarez had been trying to get his money back, but the Campusanos were avoiding him. Bezarez and his companions confronted the Campusanos. Bezarez waved his gun at them and spoke to the Campusanos in Spanish. According to Ramon, Bezarez told them to give him their money and everything they had. The Campusanos put their hands up and Bezarez instructed the Hunt brothers to "check" them. Day–Von took a cell phone and wallet from Michael, and another Campusano gave Darren twenty dollars without being searched.

Maximo reportedly told Bezarez that he was not going to give Bezarez anything. While the two were talking, Maximo tried to grab Bezarez's gun. During the ensuing struggle, Maximo was shot twice and died. Bezarez testified that he had no intention of shooting anyone and that the gun went off accidentally. Bezarez explained that the gun was cocked when someone else handed it to him, and that the "trigger was so light . . . that it just went off." Bezarez denied ever having fired the gun before that night. He also told the police that he purchased the gun one or two days before the shooting.

In rebuttal, and over Bezarez's objection, the State introduced evidence that Bezarez had fired the same gun into the floor of his mother's apartment on February 3, 2007. One police officer described the incident. Another identified the bullets extracted from the apartment floor as having been fired by the same gun that killed Maximo. Finally, Bezarez's mother testified that she heard gun shots while in her bedroom and came out to the living room to find her son was standing there with what appeared to be a gun in his hand. The State was not permitted to introduce evidence that, in response to that incident, Bezarez pled *nolo contendere* to a charge of reckless endangering.

The jury convicted Bezarez of first degree murder, felony murder, robbery, and related offenses. This appeal followed.

## DISCUSSION

■ The sole issue on appeal is whether the trial court abused its discretion in allowing the State to introduce extrinsic evidence to establish that Bezarez fired the murder weapon approximately three weeks before he killed Maximo. The State filed a motion *in limine*, seeking to admit Bezarez's criminal record for three purposes—to establish Bezarez's identity; to impeach him; and to establish the absence of mistake or accident. The trial court ruled that the reckless endangering conviction was inadmissible, but declined to rule on the State's request to introduce other evidence of Bezarez's prior use of the gun:

> [R]ight now I just don't know whether it's going to be admissible. I will tell you that if the defendant takes the stand and the defendant disavows knowing how much pressure it takes to pull the trigger, it's going to make it really probative and then we'll have to go through all the Getz factors and whether or not you can meet the standard of clear and convincing evidence.[1]

The trial court revisited this issue during trial. The court ruled that the State must question Bezarez about his prior use of the gun before it would be allowed to introduce extrinsic evidence. Before ruling, the court reviewed all of the *Getz*[2] factors and found that: (1) the evidence was material to an ultimate fact in dispute, namely whether Bezarez fired the gun accidentally; (2) the evidence was being offered for the sanctioned purpose of establishing "absence of mistake or accident;"[3] (3) the evidence was plain, clear and conclusive; (4) the earlier shooting was only three weeks before the murder and, therefore, not too remote in time; and (5) the

evidence's probative value exceeded its prejudicial effect.

Bezarez argues that the earlier shooting incident was not material to his accident defense because he never claimed to be unfamiliar with guns. He points out that, during cross-examination, he answered all of the prosecutor's questions about how to operate a gun. Thus, he contends that evidence of the reckless shooting incident was cumulative and inadmissible. But Bezarez denied ever firing the murder weapon before shooting Maximo, and testified that the gun went off by accident because it had a very light trigger. The fact that Bezarez had fired the murder weapon a few weeks earlier establishes that he knew the gun had a light trigger, and thus tends to rebut his claim of accident.

Bezarez also contends that the State's evidence was not clear and conclusive because he never admitted that he fired the gun in his mother's apartment and no one saw him shoot it. This argument also lacks merit. Bezarez's mother found him in the living room, with a gun in his hand, moments after hearing the sound of gun shots. Ballistics evidence established that the bullets in the apartment floor came from the murder weapon. The trial court correctly found that the evidence was conclusive for purposes of the *Getz* analysis.

■ Next, Bezarez argues that the "bad acts" evidence should have been excluded because its limited probative value was substantially outweighed by its prejudicial effect. We disagree. As the trial court noted, the jury already knew that Bezarez owned the gun and fired it during the struggle with Maximo. Thus, it was not particularly prejudicial for the jury to learn that he fired the gun in his mother's

1. Appellee's Appendix, B–6.

2. *Getz. v. State,* 538 A.2d 726, 730 (Del.1988).

3. Del. R. Evid. 404(b).

apartment. Moreover, in accordance with the teachings of *Getz,* the trial court gave the jury a limiting instruction.

Finally, Bezarez argues that extrinsic evidence is not admissible to impeach a defendant. The State did include impeachment as one of it reasons for wanting to introduce evidence of the prior shooting incident. But, the State also argued that the extrinsic evidence was admissible to rebut the claim of accident. The trial court correctly determined that the extrinsic evidence was admissible to disprove accident. Thus, we need not decide whether extrinsic evidence would have been admissible solely for impeachment.[4]

## CONCLUSION

Based on the foregoing, we conclude that the trial court acted within its discretion in admitting extrinsic evidence of the reckless shooting incident in Bezarez's mother's apartment. Accordingly, we affirm the judgments of conviction.

---

**4.** *See: Baumann v. State,* 891 A.2d 146 (Del. 2005).