IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALEX J. DURHAM, | § | |
| | § | |
| Defendant-Below, | § | No. 231, 2019 |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | I.D. No. 1805019020A & |
| Plaintiff-Below, | § | 1805019020B |
| Appellee. | § | |

Submitted: November 13, 2019
Decided: December 3, 2019

Before **VALIHURA**, **VAUGHN** and **TRAYNOR**, Justices.

## O R D E R

On this 3rd day of December 2019, having considered the briefs and the record below, it appears to the Court that:

(1)     On February 18, 2019, after a two-day bench trial, the Superior Court convicted Alex J. Durham of unlawful firearm possession, resisting arrest, and tampering with evidence.  On appeal, Durham contends that the court abused its discretion by considering prior bad act evidence, namely, a possible home invasion, that he contends was used to establish his identity under Delaware Rule of Evidence 404(b) without conducting an analysis under *Getz v. State*.[1]  Durham argues further that had the trial court undertaken a *Getz* analysis, it would have found the evidence inadmissible.  Although the possible home invasion was mentioned in testimony, we find that any error in introducing it was

---

[1] *Getz v. State*, 538 A.2d 726 (Del. 1988).

harmless error given the other evidence in the record that supports Durham's conviction. We also question the applicability of D.R.E. 404(b) to the testimony at issue.

(2) On May 28, 2018, Detective Tim Mullaney responded to a possible home invasion at 317 West Division Street in Dover. When he arrived, he made contact with individuals "Bird" and "Drummond," who described the intruder as "a black male, gray sweatshirt, dark pants with a gun [who] had just left the property towards New Street."[2]

(3) Responding officers canvassed the area and spotted Durham, who matched the description of the intruder. A foot chase ensued. Patrolman Spicer testified that he saw Durham with a gun in his hand, but lost sight of him for three to five seconds toward the end of the pursuit. The chase ended with Durham lying face down in a yard and without a gun. After searching the area, Patrolman Spicer found a firearm lying in the grass on the other side of a fence from where Durham was apprehended. The firearm had fresh mud and grass on it but no surface rust.

(4) Bird and Drummond declined to identify Durham as the intruder in the possible home invasion.

(5) Durham was charged with (1) Possession of a Firearm by a Person Prohibited, (2) Possession of Firearm Ammunition by a Person Prohibited, (3) Carrying a Concealed Deadly Weapon, (4) Tampering with Physical Evidence, (5) Resisting Arrest, and (6) Receiving a Stolen Firearm. He was not charged with the possible home invasion.

---

[2] App. to Opening Br. at A-20.

2

(6) Before trial, Durham's counsel and the State conferred with the court about Detective Mullaney introducing into evidence Bird and Drummond's description of the intruder. The State said that it would be introducing this statement into evidence as an excited utterance under D.R.E. 803(2). When Durham's counsel indicated that he would be objecting, the State explained that it would be tailoring the testimony narrowly to avoid triggering D.R.E. 404(b).[3] The State further described the substance of the anticipated testimony:

> I have spoken with Detective Mullaney about what testimony should come in and should not come in regarding the statements that were made at the scene, and I believe he will, one, discuss that the two individuals were very upset. He used the term irate. Yelling and cursing. Visibly distraught.
>
> When they finally were spoken to by the police officer, one of them was Mullaney and the other one was Corporal Turner with the Dover Police, Drummond indicated that a black male wearing a gray sweatshirt and dark-colored pants had a handgun.
>
> And Byrd [sic] indicated that he heard a commotion outside - - it may not have been outside - - he heard a commotion and he saw a black male with a handgun. So I wanted to keep it tailored to just the description and not to uncharged events that the police believe occurred that night.[4]

---

[3] Under D.R.E. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." D.R.E. 404(b)(2). This rule "implements the philosophy that a defendant should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged," and hence "limits use of prior crimes, calling for exclusion where the evidence tends only to show propensity." 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 4:21, Westlaw (last updated June 2019).

[4] App. to Opening Br. at A-13.

3

Counsel for Durham said he "may not have an objection" if "that's the only purpose of [Bird's and Drummond's description] coming in and it's not coming in under 404."[5]

(7)    Once the trial commenced, the State called Detective Mullaney as its first witness. He testified that on May 28, 2018, he arrived at 317 West Division, where he made contact with two individuals "that were very upset, distraught, very visibly upset about an incident that occurred."[6] He then gave the description provided by Bird and Drummond. As proffered, Detective Mullaney did not mention the possible home invasion.

(8)    However, later in the trial, Patrolman Spicer testified that that he was in the area on the night of the arrest because:

> We got a call for a possible home invasion in the area of 317 West Division street. Officer Tim Mullaney was working that night and he responded there, put out over the radio that a suspect, a black male wearing a gray sweatshirt and black pants - - dark-colored pants, fled the area of 317 West Division and had a firearm in his possession and was traveling eastbound.[7]

(9)    Counsel for Durham did not raise a contemporaneous objection to the testimony of either Detective Mullaney or Patrolman Spicer.

(10)    After the State rested its case, counsel for Durham moved for judgment of acquittal, arguing that Patrolman Spicer's testimony was not credible. The State responded that in addition to Officer Spicer's testimony, there was Detective Mullaney's testimony

---

[5] *Id.* at A-15.

[6] *Id.* at A-20.

[7] *Id.* at A-28–A-29.

4

"that two individuals described a black male with a firearm at their residence."[8] Counsel for Durham then argued that the State was using the statement as an uncharged prior bad act for purposes of establishing identity under D.R.E. 404(b) which "is very prejudicial to Mr. Durham because it insinuates to the fact-finder that he was involved" with the home invasion.[9] The court denied the motion.

(11) After a two-day bench trial on February 11–12, 2019, Durham was convicted on February 18, 2019 of all charges except for the Receiving a Stolen Firearm charge. As to that charge, the State entered a *nolle prosequi* at the conclusion of the case. Durham was sentenced on May 16, 2019. Durham received a cumulative sentence of nine years of incarceration followed by decreasing levels of community supervision.

(12) Durham appeals his conviction and sentencing, contending that the Superior Court abused its discretion by considering prior bad act evidence, which he contends was improperly used for purposes of establishing identity under D.R.E. 404(b), without conducting a *Getz* analysis. The State argues that a D.R.E. 404(b) analysis was not required and that Bird's and Drummond's statements to Officer Mullaney qualified as excited utterances under D.R.E. 803(2). "We review the Superior Court's rulings on the admission of evidence for an abuse of discretion."[10] "An abuse of discretion occurs when a court has

---

[8] *Id.* at A-55.

[9] *Id.* at A-58.

[10] *Baumann v. State*, 891 A.2d 146, 148 (Del. 2005) (citing *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994)).

exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[11]

(13) Although the Superior Court noted in its bench ruling on the motion for judgment of acquittal that it "does not recall any discussion of what acts had been committed at the address of 317 West Division Street that caused the people . . . to be perturbed and upset,"[12] the trial transcript indicates that Patrolman Spicer did testify that the officers were responding to a possible home invasion at that address and that the description was that of the home invasion suspect.

(14) Based upon our review of the record before us, we affirm the conviction and sentencing and hold that even if the introduction of the possible home invasion constituted error, it was harmless error. The Superior Court observed that:

> [T]he Court does not believe that information to be essential in this case because this is not a situation which - - might have been different if those two individuals, their statement about someone having a gun had been the only evidence of the defendant possessing a firearm. In this case, we also have Patrolman Spicer's testimony to that effect.[13]

The court found Patrolman Spicer's testimony to be "particularly credible," and that his testimony was corroborated by video evidence.[14] Our review of the record shows that Patrolman Spicer testified that during his pursuit of Durham, Spicer "saw [Durham's] hand go near his waistband area of his sweatpants and come out with a black firearm, black

---

[11] *Id.*

[12] App. to Opening Br. at A-58.

[13] *Id.* at A-59–A-60.

[14] Opening Br. at Ex. A (Trial Tr. at 4).

6

handgun."[15] Spicer testified that he "saw the black slide of the handgun and I saw his palm wrapped around the butt of the gun,"[16] and that Durham "was turned around looking at me and had the gun in his right hand."[17] Spicer further testified that he told Durham to stop and "drop the gun."[18] At that point in the chase, Spicer stated that the lighting was "good" given the "streetlights up and down West Division."[19] Moreover, Patrolman Spicer's description of the firearm matched the gun entered into evidence, and he identified it as the gun he that saw Durham carrying.[20] There was ample evidence to support a conviction beyond a reasonable doubt.

(15) Moreover, we question the applicability of D.R.E. 404(b) to the challenged testimony. Bird and Drummond's description of the man with the gun at the site of the possible home invasion was not referring to a prior bad act that exhibited Durham's propensity to illegally possess a firearm. Rather, it explained what prompted the police to chase Durham. In other words, Bird and Drummond's hearsay statement described a part of the sequence of the very act of firearm possession for which he was prosecuted.

---

[15] App. to Opening Br. at A-31.

[16] *Id.*

[17] *Id.* at A-31–A-32.

[18] *Id.* at A-32.

[19] *Id.*

[20] *Id.* at A-55.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is hereby AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice